# Exhibit A

## Town of Davie Plaintiff vs. Ferguson Enterprises LLC, et al Defendant

**Broward County Case Number:** CACE25013883
**State Reporting Number:** 062025CA013883AXXXCE
**Court Type:** Civil
**Case Type:** Contract and Indebtedness
**Incident Date:** N/A
**Filing Date:** 09/12/2025
**Court Location:** Central Courthouse
**Case Status:** Active
**Magistrate Id / Name:** N/A
**Judge ID / Name:** Bowman, John B

### − Party(ies)

Total: 3

| Party Type | Party Name | ❓ Address | ❓ Attorneys / Address ★ Denotes Lead Attorney |
|---|---|---|---|
| Plaintiff | **Town of Davie** | | ★ McAliley, Eric L<br>Retained<br>Bar ID: 174343<br>LYDECKER DIAZ<br>2300 Glades Road, Suite 330W<br>Boca Raton, FL 33431<br>**Status: Active** |
| Defendant | **Ferguson Enterprises LLC** | | |
| Defendant | **Mueller Systems, LLC** | | |

## ▬ Disposition(s)

Total: 0

| Date | Statistical Closure(s) |
|------|------------------------|

| Date | Disposition(s) | View / Pages |
|------|----------------|--------------|

## ▬ Event(s) & Document(s)

Total: 8

| Date | Description | Additional Text | View / Pages |
|------|-------------|-----------------|--------------|
| 01/05/2026 | **Summons Returned Served** | FERGUSON ENTERPRISES, LLC c/o Corporate Creations Network, Inc., as Registered Agent, 12th day of De ember, 2025 at 3:12 pm | /1 |
| 01/05/2026 | **Summons Returned Served** | MUELLER SYSTEM LLC c/o CT Corporation System as Registered Agent, 15th day of December, 2025 at 2:08 pm | /1 |
| 12/11/2025 | **Sua Sponte Order** | SUA SPONTE ORDER TO SERVE DEFENDANT(S) AND IMPENDING DISMISSAL | /2 |
| 12/08/2025 | **eSummons Issuance** | ISSUE ON: FERGUSON ENTERPRISES, LLC | /2 |
| 12/08/2025 | **eSummons Issuance** | ISSUE ON: MUELLER SYSTEMS LLC | /2 |
| 09/12/2025 | **Complaint (eFiled)** | | /60 |

| Date | Description | Additional Text | View / Pages |
|------|-------------|-----------------|--------------|
| 09/12/2025 | **Civil Cover Sheet** | Amount: $100,001.00 | 📄/3 |
| 09/12/2025 | **Per AOSC20-23 Amd12, Case is determined General** | | |

**━ Hearing(s)**                                                                      Total: 0

**There is no Hearing information available for this case.**

**━ Related Case(s)**                                                                   Total: 0

**There is no related case information available for this case.**

## <u>VERIFIED RETURN OF SERVICE</u>

**State of Florida**        County of Broward        **Circuit Court**

Case Number: CACE-25-13883

Plaintiff:
**TOWN OF DAVIE,**

vs.

Defendant:
**FERGUSON ENTERPRISES LLC and MUELLER SYSTEMS LLC,**

For:
Eric L. McAliley, Esq.
Lydecker
1221 Brickell Avenue
19th Floor
Miami, FL 33131

Received by Quick Response Process Serving on the **9th day of December, 2025** at 10:55 am to be served on **FERGUSON ENTERPRISES, LLC c/o Corporate Creations Network, Inc., as Registered Agent, 801 US Highway 1, North Palm Beach, Palm Beach County, FL 33408.**

I, Sedric L. Johnson, do hereby affirm that on the **12th day of December, 2025** at 3:12 pm, I:

served a **CORPORATION** by delivering a true copy of the **Summons, Complaint, Exhibit "A", Exhibit "B", Exhibit "C", Exhibit "D", Exhibit "E", Exhibit "F" and Exhibit "G"** with the date and hour of service endorsed thereon by me, to: **Carotta Cartwright as Records Custodian for Creations Network** for **FERGUSON ENTERPRISES, LLC**, at the address of: **801 US Highway 1, North Palm Beach, Palm Beach County, FL 33408**, and informed said person of the contents therein, in compliance with state statutes 48.031, 48.081, 48.081(3), 48.091

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good standing, in the judicial circuit in which the process was served.

_____

**Sedric L. Johnson**
Process Server #903

**Quick Response Process Serving**
**1421 S.W. 107 Avenue**
**# 183**
**Miami, FL 33174**
**(305) 859-9550**

Our Job Serial Number: QRP-2025002571
Ref: 62144

Copyright © 1992-2025 DreamBuilt Software, LLC. - Process Server's Toolbox V9.0c

## VERIFIED RETURN OF SERVICE

State of Florida                    County of Broward                    Circuit Court

Case Number: CACE-25-13883

Plaintiff:
**TOWN OF DAVIE,**

vs.

Defendant:
**FERGUSON ENTERPRISES LLC and MUELLER SYSTEMS LLC,**

For:
Eric L. McAliley, Esq.
Lydecker
1221 Brickell Avenue
19th Floor
Miami, FL 33131

Received by Quick Response Process Serving on the **9th day of December, 2025** at 10:55 am to be served on **MUELLER SYSTEM LLC c/o CT Corporation System as Registered Agent, 1200 S. Pine Island Rd., Plantation, Broward County, FL 33324.**

I, Sedric L. Johnson, do hereby affirm that on the **15th day of December, 2025** at 2:08 pm, I:

served a **CORPORATION** by delivering a true copy of the **Summons, Complaint, Exhibit "A", Exhibit "B", Exhibit "C", Exhibit "D", Exhibit "E", Exhibit "F" and Exhibit "G"** with the date and hour of service endorsed thereon by me, to: **Donna Moch as Sr. Corp. Operations Mgr. Of CT Corporation System for MUELLER SYSTEM LLC**, at the address of: **1200 South Pine Island Road, Plantation, Broward County, FL 33324**, and informed said person of the contents therein, in compliance with state statutes 48.031, 48.081, 48.081(3), 48.091

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good standing, in the judicial circuit in which the process was served.

**Sedric L. Johnson**
Process Server #903

**Quick Response Process Serving**
**1421 S.W. 107 Avenue**
**# 183**
**Miami, FL 33174**
**(305) 859-9550**

Our Job Serial Number: QRP-2025002572
Ref: 62144

Copyright © 1992-2025 DreamBuilt Software, LLC - Process Server's Toolbox V9.0c

**IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA**

CASE NO. <u>CACE25013883</u>   DIVISION: <u>02</u>   JUDGE: <u>Bowman, John B (02)</u>

**Town of Davie**

Plaintiff(s) / Petitioner(s)

v.

**Ferguson Enterprises LLC, et al**

Defendant(s) / Respondent(s)

_____/

<u>**SUA SPONTE ORDER TO SERVE DEFENDANT(S) AND IMPENDING DISMISSAL**</u>

THIS CAUSE is before the court for review based on its case management obligations. The Court finds that the Plaintiff has not served the Defendant(s) within (90) days of filing of the complaint, on 9/12/2025.

Plaintiff is hereby placed on notice that it must complete service of process within the next (30) days, to be in compliance with the Florida Rule of Civil Procedure 1.070.
Accordingly, it is hereby **ORDERED** that:

1. Plaintiff shall serve Defendant(s) by <u>**January 12, 2026**</u>. Failure to serve in compliance with Rule 1.070 will result in dismissal of unserved defendants, or dismissal of the entire action without prejudice, without further notice or hearing.

2. If Plaintiff is unable to serve by the deadline, Plaintiff may file a motion to extend service. The motion must contain specific detail showing good cause or excusable neglect for the failure and what steps have been taken and are being undertaken to serve. No extension will be granted unless a timely motion is filed which lays out the required detail, and the case or individual defendants will be dismissed for failure to serve. Failure to timely serve without a filing of good cause will result in the case being dismissed without further notice or hearing as to any unserved defendant.

**DONE AND ORDERED** in Chambers at Broward County, Florida on <u>11th day of December, 2025</u>.

<u>CACE25013883 12-11-2025 2:52 PM</u>
Hon. John Bowman
**CIRCUIT COURT JUDGE**
Electronically Signed by John Bowman

**Copies Furnished To:**
Abbe Vogel , E-mail : avogel@lydecker.com
Daniel Muggeo, Esquire , E-mail : dmuggeo@lydecker.com
Eric L. McAliley , E-mail : christy@lydecker.com
Eric L. McAliley , E-mail : elm@lydecker.com
Eric L. McAliley , E-mail : cs@lydecker.com
Giselle Leyva , E-mail : gleyva@lydecker.com

IN THE CIRCUIT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

TOWN OF DAVIE,

     Plaintiff,

v.

     Case No.:  CACE-25-13883

FERGUSON ENTERPRISES LLC and
MUELLER SYSTEMS LLC,

     Defendants.

_____/

### SUMMONS

TO:    FERGUSON ENTERPRISES, LLC
       c/o Corporate Creations Network, Inc., as Registered Agent
       801 US Highway 1
       North Palm Beach, FL  33408

THE STATE OF FLORIDA:

To each Sheriff of the State:

     YOU ARE COMMANDED to serve this Summons, a copy of the Complaint on Defendant, FERGUSON ENTERPRISES, LLC.

### IMPORTANT

     A lawsuit has been filed against you.  You have **20 calendar days** after this summons is served on you to file a written response to the attached complaint/petition with the clerk of this circuit court, located at:  Broward County Courthouse, 201 SE 6th Street, Ft. Lauderdale, Florida 33301.  A phone call will not protect you.  Your written response, including the case number given above and the names of the parties, must be **filed** if you want the Court to hear your side of the case.

     **If you do not file your written response on time, you may lose the case, and your wages, money, and property may be taken thereafter without further warning from the Court.**  There are other legal requirements.  You may want to call an attorney right away.  If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

     If you choose to file a written response yourself, at the same time you file your written response to the Court, you must also mail or take a copy of your written response to the party serving this summons at:

Name and address of party serving summons:

**Eric L. McAliley, Esquire**
**Daniel Muggeo, Esquire**
**LYDECKER, LLP**
**2300 Glades Road, Suite 340W**
**Boca Raton, FL  33431**
**elm@lydecker.com**
**dmuggeo@lydecker.com**
**christy@lydecker.com**

      **Copies of all court documents in this case, including orders, are available at the Clerk of the Circuit Court's office.  You may review these documents, upon request.**

      **You must keep the Clerk of the Circuit Court's office notified of your current address.**

THE STATE OF FLORIDA

      **TO EACH SHERIFF OF THE STATE:**  You are commanded to serve this summons and a copy of the complaint in this lawsuit on the above-named person.

Dated: _____      DEC 09 2025

(SEAL)                            CLERK OF THE CIRCUIT COURT

By:_____

    Deputy Clerk

BRENDA D. FORMAN

IN THE CIRCUIT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

TOWN OF DAVIE,

      Plaintiff,                      Case No.:  CACE-25-13883

v.

FERGUSON ENTERPRISES LLC and
MUELLER SYSTEMS LLC,

      Defendants.

_____/

**SUMMONS**

TO:    MUELLER SYSTEMS LLC
        c/o CT Corporation System as Registered Agent
        1200 S. Pine Island Rd.
        Plantation, FL 33324

THE STATE OF FLORIDA:

To each Sheriff of the State:

      YOU ARE COMMANDED to serve this Summons, a copy of the Complaint on Defendant,
MUELLER SYSTEMS, LLC.

**IMPORTANT**

      A lawsuit has been filed against you.  You have **20 calendar days** after this summons is
served on you to file a written response to the attached complaint/petition with the clerk of this
circuit court, located at:  Broward County Courthouse, 201 SE 6th Street, Ft. Lauderdale, Florida
33301.  A phone call will not protect you.  Your written response, including the case number given
above and the names of the parties, must be **filed** if you want the Court to hear your side of the
case.

      **If you do not file your written response on time, you may lose the case, and your wages,
money, and property may be taken thereafter without further warning from the Court.**  There
are other legal requirements.  You may want to call an attorney right away.  If you do not know an
attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

      If you choose to file a written response yourself, at the same time you file your written
response to the Court, you must also mail or take a copy of your written response to the party
serving this summons at:

Name and address of party serving summons:

**Eric L. McAliley, Esquire**
**Daniel Muggeo, Esquire**
**LYDECKER, LLP**
**2300 Glades Road, Suite 340W**
**Boca Raton, FL  33431**
**elm@lydecker.com**
**dmuggeo@lydecker.com**
**christy@lydecker.com**

   **Copies of all court documents in this case, including orders, are available at the Clerk of the Circuit Court's office.  You may review these documents, upon request.**

   **You must keep the Clerk of the Circuit Court's office notified of your current address.**

THE STATE OF FLORIDA

   **TO EACH SHERIFF OF THE STATE:**  You are commanded to serve this summons and a copy of the complaint in this lawsuit on the above-named person.

Dated. _____DEC 09 2025_____


(SEAL)        CLERK OF THE CIRCUIT COURT



By:_____
   Deputy Clerk

BRENDA D. FORMAN

Case 0:26-cv-60052-XXXX   Document 1-2   Entered on FLSD Docket 01/09/2026   Page 13 of 75

**FORM 1.997.   CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

### I.   CASE STYLE

IN THE CIRCUIT/COUNTY COURT OF THE <u>SEVENTEENTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>BROWARD</u>   COUNTY, FLORIDA

<u>Town of Davie</u>
Plaintiff

Case # _____
Judge _____

vs.

<u>Ferguson Enterprises LLC, Mueller Systems, LLC</u>
Defendant

### II.   AMOUNT OF CLAIM

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

- ☐ $8,000 or less
- ☐ $8,001 - $30,000
- ☐ $30,001- $50,000
- ☐ $50,001- $75,000
- ☐ $75,001 - $100,000
- ☒ over $100,000.00

### III.   TYPE OF CASE   (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

- 1 -

**CIRCUIT CIVIL**

☐ Condominium
☒ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
      ☐ Business governance
      ☐ Business torts
      ☐ Environmental/Toxic tort
      ☐ Third party indemnification
      ☐ Construction defect
      ☐ Mass tort
      ☐ Negligent security
      ☐ Nursing home negligence
      ☐ Premises liability—commercial
      ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
      ☐ Commercial foreclosure
      ☐ Homestead residential foreclosure
      ☐ Non-homestead residential foreclosure
      ☐ Other real property actions

☐ Professional malpractice
      ☐ Malpractice—business
      ☐ Malpractice—medical
      ☐ Malpractice—other professional
☐ Other
      ☐ Antitrust/Trade regulation
      ☐ Business transactions
      ☐ Constitutional challenge—statute or ordinance
      ☐ Constitutional challenge—proposed amendment
      ☐ Corporate trusts
      ☐ Discrimination—employment or other
      ☐ Insurance claims
      ☐ Intellectual property
      ☐ Libel/Slander
      ☐ Shareholder derivative action
      ☐ Securities litigation
      ☐ Trade secrets
      ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.**    **REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☐ Nonmonetary declaratory or injunctive relief;
☐ Punitive

**V.**    **NUMBER OF CAUSES OF ACTION:** [  ]
(Specify)

   5

**VI.**    **IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    ☒ no

**VII.**    **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☒ no
    ☐ yes If "yes," list all related cases by name, case number, and court.

**VIII.**    **IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☐ yes
    ☒ no

**IX.**    **DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
    ☐ yes
    ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: s/ Eric L. McAliley       Fla. Bar # 174343
       Attorney or party            (Bar # if attorney)

Eric L. McAliley           09/12/2025
  (type or print name)          Date

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

IN THE CIRCUIT COURT OF
THE 17TH JUDICIAL CIRCUIT IN AND
FOR BROWARD COUNTY, FLORIDA

TOWN OF DAVIE,

                 Plaintiff,

CASE NO.:

vs.

FERGUSON ENTERPRISES LLC., and
MUELLER SYSTEMS LLC.,

                 Defendants.

_____/

## COMPLAINT

Plaintiff, TOWN OF DAVIE ("The Town") files its Complaint against FERGUSON ENTERPRISES LLC, ("Ferguson"), and MUELLER SYSTEMS LLC ("Mueller") and alleges as follows:

## NATURE OF THE ACTION

1. This is an action for damages arising from Defendants' work in implementing, installing, and servicing an Advanced Metering Infrastructure Project in the Town of Davie.

2. FERGUSON ENTERPRISES LLC, ("Ferguson"), and MUELLER SYSTEMS LLC ("Mueller") were contracted by the Town for the Advanced Metering Infrastructure ("AMI") Project and Ferguson and Mueller provided warranties regarding the work they performed on the Project.

3. Ferguson and Mueller have failed to provide the AMI Project that was contracted for and have breached their obligations under the contracts and warranties issued to the Town.

## THE PARTIES

4. Plaintiff, TOWN OF DAVIE ("The Town") is a Florida Municipal Corporation, at all times material hereto, conducting business and located in Broward County, Florida.

*** FILED: BROWARD COUNTY, FL  BRENDA D. FORMAN,  CLERK 09/12/2025 01:42:15 PM.****

Case 0:26-cv-60052-XXXX   Document 1-2   Entered on FLSD Docket 01/09/2026   Page 17 of 75
Town of David D. Ferguson, et al.
Page 2

5.     Defendant, FERGUSON ENTERPRISES LLC ("Ferguson") is a foreign limited liability company, at all times material hereto, conducting business in Broward County, Florida.

6.     MUELLER SYSTEMS LLC ("Mueller") is a foreign profit corporation, at all times material hereto, conducting business in Broward County, Florida.

## JURISDICTION AND VENUE

7.     This is an action for monetary damages exceeding $50,000.00 exclusive of interest, costs and attorneys' fees.

8.     Defendant Ferguson is a foreign limited liability company, at all times material hereto, conducting business in Broward County, Florida.

9.     Defendant Mueller is subject to this Court's jurisdiction because it is a foreign limited liability company licensed to conduct business in Florida, and regularly conducts business in Florida.

10.     Further, the municipality the events in question took place is located in Broward County, Florida.

## FACTUAL ALLEGATIONS

**Ferguson**

11.     On or about August 2, 2017, The Town issued Request for Proposals B-17-149 in regard to the Advanced Metering Infrastructure ("AMI") Project. *See* RFP B-17-149 attached as **Exhibit "A".**

12.     The goal of RFP B-17-149 was to implement an Advanced Metering Infrastructure system in conjunction with replacing approximately 9,600 water meters in The Town.

13.     The scope of the work sought in RFP B-17-149 was to include supply and installation of meters concurrent with the AMI installation.

Case 0:26-cv-60052-XXXX   Document 1-2   Entered on FLSD Docket 01/09/2026   Page 18 of 75
Town of David O. Ferguson, et al.
Page 3

14.     On or about September 22, 2017, Ferguson submitted a Proposal in response to the Town's RFP B-17-149. *See* Ferguson Proposal attached as **Exhibit "B".**

15.     Ferguson's Proposal proposed the use of the Mi.Net AMI solution from Mueller.

16.     In their Proposal, Ferguson described the Mi.Net as "an efficient AMI and MDM system backed by innovation and superior local service that is critical to your goals of improving the meter reading process, increasing billing accuracy, satisfying the customer's expectations and gaining overall system control."

17.     On or about July 25, 2018, The Town, through Resolution No. R 2018-205, accepted the negotiated agreement with Ferguson for the materials, installation, services, and the contract with Mueller for the AMI software. *See* Resolution No. R 2018-205 attached as **Exhibit "C".**

18.     On or about July 25, 2018, The Town and Ferguson entered into a Contract for Installation and Services and a Materials Contract Services contract whereby Ferguson agreed to provide Advance Metering Infrastructure installation and services pursuant to RFP No. B-17-149. *See* Contract for Installation and Services attached as **Composite Exhibit "D".**

19.     On or about December 5, 2018, the Town through Resolution No. R 2018-329 corrected a scrivener's error in Resolution No. 2018-205. *See* Resolution No. R 2018-329 a attached as **Exhibit "E".**

20.     Per the Contract for Installation and Services, Ferguson fully guaranteed the materials and installation for two (2) years from the date of final acceptance.

21.     Ferguson also provided additional warranty coverage as the prime contractor. *See* Ferguson Warranty Proposal and Supplemental Endpoint Warranty and Performance Guarantee Proposal attached as **Exhibit "F".**

Case 0:26-cv-60052-XXXX   Document 1-2   Entered on FLSD Docket 01/09/2026   Page 19 of 75
Town of David v. Ferguson, et al.
Page 4

22.     The total terms of the warranties provided by Ferguson are for a period of ten (10) years and is provided in addition to the warranty issued by Mueller.

23.     Per the Ferguson warranty, should Endpoint Failures occur at a rate higher than 2% in a calendar year, the Provider shall assume 100% responsibility for labor and materials required to repair or replace the components.

**Mueller**

24.     In 2018, The Town and Mueller entered into the Mueller Systems Master Agreement. *See* Mueller Systems Master Agreement attached as **Exhibit "G".** [1]

25.     The Mueller Systems Master Agreement was to govern the sale by Mueller and the purchase by the Town for its use if Equipment, Software, Documentation and other items related to advanced metrology infrastructure systems.

26.     The Mueller Systems Master Agreement contained a Limited Warranty that stated Mueller would either (1) repair or replace any Software containing an error or condition which is reported by Customer in writing to Mueller Systems which causes the Software not to conform with the warranty set forth herein; or (2) refund a pro-rated amount paid by Customer to Mueller Systems and terminate this Agreement and all licenses provided here in.

27.     Mueller also agreed to repair or replace any equipment that was found to be noncompliant during the warranty period.

28.     Appendix A of The Mueller Systems Master Agreement further stated that the Hardware would be free from defects in materials and workmanship under normal use.

29.     Claims under the Mueller warranty would be considered if submitted to Mueller within sixty (60) days following the discovery of any defect.

---

[1] Due to the size of many of the Exhibits, only the relevant portions have been included. The full exhibits, with their attachments are available upon request.

Case 0:26-cv-60052-XXXX   Document 1-2   Entered on FLSD Docket 01/09/2026   Page 20 of 75
Town of David W. Ferguson, et al.
Page 5

**Issues with the Meter Project**

30.     Following entering into the contracts in question, 10,031 Mueller meters were installed across The Town.

31.     From the start of the Advanced Metering Infrastructure Project going live, the Town has experienced issues and the AMI has not performed as contracted.

32.     The issues with the AMI include but are not limited to: meters failing to read, meters turning off, meters failing to communicate with the system, hardware failures, software failures, long lead time for meter replacements, and failure of the data transfer file.

33.     As of the date of the filing of this Complaint, at least 3,106 Mueller meters have failed.

34.     As a result, the Mueller AMI System continues to fail and The Town has incurred damages in excess of $8,000,000.00.

35.     Further, The Town has expended substantial funds and time in order to address the issues presented by the malfunctioning Mueller systems and equipment.

36.     All conditions precedent to filing this lawsuit have been performed, excused, or waived.

**COUNT I - BREACH OF CONTRACT AGAINST FERGUSON**

37.     The Town incorporates by reference each of the allegations made in paragraphs 1 - 36 above as if fully set forth herein.

38.     On or about July 25, 2018, The Town and Ferguson entered into a Contract for Installation and Services and a Materials Contract Services contract whereby Ferguson agreed to provide Advance Metering Infrastructure installation and services pursuant to RFP No. B-17-149. *See* Contract for Installation and Services attached as **Composite Exhibit "D".**

Case 0:26-cv-60052-XXXX   Document 1-2   Entered on FLSD Docket 01/09/2026   Page 21 of 75
Town of David v. Ferguson, et al.
Page 6

39.     Additionally, per the Contract, Ferguson agreed to be bound by the terms of RFP B-17-149 and Addendums 1-4.

40.     RFP B-17-149 called for the implementation of an Advanced Metering Infrastructure System in conjunction with replacing water meters in the Town's utility service area.

41.     Included in the scope was also providing the appropriate Software, servers, desktops, handheld and/or field computers, ERTs (endpoints), repeaters, hardware, software, towers, transponders, boosters, and other related appurtenances necessary for fully functional ready to use AMI system.

40.     Ferguson has breached the terms of Composite Exhibit D by failing to furnish, install, and service the AMI system that was the subject of  RFP No. B-17-149.

41.     Ferguson's breaches include failing to install a fully functioning AMI System, failed to properly install/replace water meters in the Town, and failed to install software and/or applications necessary for a fully functional and ready-to-use AMI system.

42.     As a direct and foreseeable result of Ferguson's breach of the Contract, The Town has suffered monetary damages in excess of $8,000,000.00, and will continue to suffer damages, exclusive of interest and costs.

**WHEREFORE**, TOWN OF DAVIE demands judgment against FERGUSON ENTERPRISES LLC for monetary damages, interest, and for such other and further relief as this Court deems just and proper under the circumstances.

## COUNT II - BREACH OF CONTRACT AGAINST MUELLER

43.     The Town incorporates by reference each of the allegations made in paragraphs 1 - 36 above as if fully set forth herein.

Case 0:26-cv-60052-XXXX   Document 1-2   Entered on FLSD Docket 01/09/2026   Page 22 of 75
Town of David v. Ferguson, et al.
Page 7

44.     In 2018, The Town and Mueller entered into the Mueller Systems Master Agreement whereby Mueller agreed to provide equipment, software, and services in connection with the Advanced Metering Infrastructure Project. *See* Mueller Systems Master Agreement attached as **Exhibit "G".**

45.     Mueller has breached the Mueller Systems Master Agreement by failing to provide proper equipment to the project, failing to provide proper software to the Project, and failing to provide proper services regarding the support and maintenance of the Project.

46.     As a direct and foreseeable result of Mueller's breach of the Contract, The Town has suffered monetary damages in excess of $8,000,000.00, and will continue to suffer damages, exclusive of interest and costs.

**WHEREFORE**, TOWN OF DAVIE demands judgment against MUELLER SYSTEMS LLC for monetary damages, interest, and for such other and further relief as this Court deems just and proper under the circumstances.

## COUNT III- BREACH OF WARRANTY AGAINST FERGUSON

47.     The Town incorporates by reference each of the allegations made in paragraphs 1 - 36 above as if fully set forth herein.

48.     Per the Contract for Installation and Services, Ferguson fully guaranteed the materials and installation for two (2) years from the date of final acceptance.

49.     Ferguson also provided additional warranty coverage as the prime contractor. *See* Ferguson Warranty Proposal and Supplemental Endpoint Warranty and Performance Guarantee Proposal attached as **Exhibit "F".**

50.     Per the Ferguson Warranty Proposal and Supplemental Endpoint Warranty and Performance Guarantee Proposal, Ferguson agreed to provide 100% coverage for infrastructure

Case 0:26-cv-60052-XXXX   Document 1-2   Entered on FLSD Docket 01/09/2026   Page 23 of 75
Town of David v. Ferguson, et al.
Page 8

materials, infrastructure repair/replacement labor, and endpoint installation for years 1 and 2 of the Contract.

51.     Ferguson also agreed to provide 100% warranty coverage of all meters, registers and/or Mi.Node transmitters as verified and approved through the Mueller Systems RMA process.

52.     Further, Ferguson agreed to provide 100% warranty coverage for component failures over 2.0% annually for years 1-10.

53.     Of the 10,031 meters installed, at least 3,106 have experienced a failure.

54.     The defects in the meters and the system existed at the time of the Contract.

55.     The Town has provided continuous notice of the issues and failures to Ferguson in an attempt to have the issues cured under the Ferguson warranty.

56.     To date, Ferguson has not been able to repair the defects.

57.     The meters and system are not performing as intended and the warranties provided by Ferguson are failing in their essential purpose.

58.     As a direct and foreseeable result of Ferguson's breaches of the Ferguson's warranties, The Town has suffered monetary damages in excess of $8,000,000.00, and will continue to suffer damages, exclusive of interest and costs

**WHEREFORE**, TOWN OF DAVIE demands judgment against FERGUSON ENTERPRISES LLC for monetary damages, interest, and for such other and further relief as this Court deems just and proper under the circumstances.

## COUNT IV - BREACH OF WARRANTY AGAINST MUELLER

59.     The Town incorporates by reference each of the allegations made in paragraphs 1 - 36 above as if fully set forth herein.

60.     Per the Mueller Systems Master Agreement entered into with The Town, Mueller agreed to provide a Limited Warranty for their Systems Products.

Case 0:26-cv-60052-XXXX   Document 1-2   Entered on FLSD Docket 01/09/2026   Page 24 of 75
Town of David v. Ferguson, et al.
Page 9

61.     Per the Mueller Limited Warranty, Mueller agreed that they would repair or replace any software containing an error or condition that causes the software to not conform or refund a pro-rated amount and terminate the agreement.

62.     Additionally, Mueller agreed that they would repair or replace any equipment that was found to be noncompliant.

63.     Of the 10,031 meters installed, at least 3,106 have experienced a failure.

64.     Meters continue to fail at a rate that exceeds 2%, no large meter inventory has been received or replaced, and the SWAP file is still non-functional.

65.     The defects in the meters and the system existed at the time of the Mueller Systems Master Agreement.

66.     The Town has provided continuous notice of the issues to Mueller in an attempt to have the issues cured under the Mueller Limited Warranty.

67.     Further, the Town has complied with all of the conditions of the Mueller Warranty and has timely submitted claims for warranty.

68.     To date, Mueller has not been able to repair the defects.

69.     In sum, the system is not performing as intended and the Limited Warranty is failing in its essential purpose.

70.     As a direct and foreseeable result of Mueller's breaches of the Mueller Limited Warranty, The Town has suffered monetary damages in excess of $8,000,000.00, and will continue to suffer damages, exclusive of interest and costs.

**WHEREFORE**, TOWN OF DAVIE demands judgment against MUELLER SYSTEMS LLC for monetary damages, interest, and for such other and further relief as this Court deems just and proper under the circumstances.

Case 0:26-cv-60052-XXXX   Document 1-2   Entered on FLSD Docket 01/09/2026   Page 25 of 75
Town of David v. Ferguson, et al.
Page 10

## COUNT V - NEGLIGENT MISREPRESENTATION AGAINST FERGUSON

71.     The Town incorporates by reference each of the allegations made in paragraphs 1 - 36 above as if fully set forth herein.

72.     In the Ferguson Proposal  to The Town's RFP B-17-149, Ferguson proposed the use of the Mi.Net AMI solution from Mueller.

73.     At the time of the Ferguson Proposal, Ferguson made false statements of material fact regarding the efficiency and quality of the Mi.Net AMI solution from Mueller.

74.     At the time of the Ferguson Proposal, Ferguson either knew or should have known that the statements they made regarding Mi.Net AMI solution from Mueller were false.

75.     The statements from Ferguson were made in an attempt to induce The Town to accept the Ferguson Proposal submitted in response to The Town's RFP B-17-149.

76.     Ultimately, The Town, through Resolution No. R 2018-205, accepted the negotiated agreement with Ferguson for the materials, installation, services, and the contract with Mueller for the AMI software.

77.     The Town has suffered and will continue to suffer damages due to its reliance on the representations made by Ferguson regarding Mi.Net AMI solution from Mueller.

**WHEREFORE**, TOWN OF DAVIE demands judgment against FERGUSON ENTERPRISES LLC for monetary damages, interest, and for such other and further relief as this Court deems just and proper under the circumstances.


[This Space Left Intentionally Blank]

Case 0:26-cv-60052-XXXX   Document 1-2   Entered on FLSD Docket 01/09/2026   Page 26 of 75

Town of David v. Ferguson, et al.
Page 11

Filed this 12th day of September, 2025.

LYDECKER LLP

2300 Glades Road, Suite 340W
Boca Raton, FL 33431
(786) 587-1899

By:      */s/ Eric McAliley*
ERIC  L. McALILEY, ESQ.
 Florida Bar No.: 174343
Email: elm@lydecker.com
DANIEL MUGGEO, ESQ.
Florida Bar No.:  123888
Email: dmuggeo@lydecker.com
Secondary: christy@lydecker.com

# Exhibit "A"

Town of Davie, FL

_____
Company Submitting Response

# REQUEST FOR PROPOSALS



| | |
|---|---|
| **RFP NO:** | **B-17-149** |
| **TITLE:** | **Advanced Metering Infrastructure (AMI) Project** |
| **AVAILABLE:** | **August 2, 2017** |
| **NON-MANDATORY PRE-PROPOSAL MEETING:** | **10:00 AM on Thursday, June 29, 2017**<br>**TOWN OF DAVIE – Town Hall**<br>**6591 Orange Drive**<br>**Davie, FL 33314** |
| **DUE DATE:** | **2:00 PM Thursday, August 31, 2017** |
| **SUBMIT TO:** | **TOWN OF DAVIE - Procurement Division**<br>**Attn: Brian K. O'Connor, C.P.M.**<br>**6591 Orange Drive**<br>**Davie, FL 33314** |
| **REVIEW COMMITTEE MEETING:** | **September 2017** |
| **COUNCIL APPROVAL:** | **September/October 2017** |
| **BID BOND:**<br>**PAYMENT & PERFORMANCE BOND:** | **No**<br>**Yes (100% of Total Contract Amount)** |

**TOWN OF DAVIE**
**RFP NO. B-17-149**
**REQUEST FOR PROPOSALS**
**Advanced Metering Infrastructure (AMI) Project**



Dear Potential Proposer:

The Town of Davie, Florida invites qualified firms to submit responses in accordance with the scope of services, terms and conditions contained herein no later than **2:00 PM Thursday, August 31, 2017** for **RFP No. B-17-149 Advanced Metering Infrastructure (AMI) Project.** Interested firms may secure the solicitation package and all other pertinent information by visiting http://www.davie-fl.gov/bids or at DemandStar.com.

**A Non-Mandatory Pre-Proposal Conference will be held at 10:00 AM on Friday, August 11, 2017** at Town Hall Council Chambers, 6591 Orange Drive, Davie, FL 33314. The conference is an opportunity for Town project leaders to provide an overview of the project and for potential respondents to ask questions.

Questions regarding this solicitation shall be submitted in writing to bids@davie-fl.gov no later than 5:00 PM on Wednesday, August 23, 2017. Responses to those questions considered material to the solicitation will be made available as formal addenda on the Town's Purchasing website and DemandStar.com. It is the responsibility of prospective respondents to ensure they are aware of all addenda issued relative to this solicitation.

Respondents shall submit **One (1) original complete proposal package + Six (6) duplicate copies of said package + One (1) flash drive or CD copy,** to the **Town of Davie Budget and Finance / Purchasing Division – Attention: Purchasing Manager, Brian K. O'Connor, 6591 Orange Drive Davie, FL 33314** on or before the due date stipulated above. All packages shall be clearly marked "*RFP No. B-17-149 Advanced Metering Infrastructure (AMI) Project.*" The Town will not be responsible in the event the U.S. Postal Service or any other courier system fails to deliver any package by the above referenced deadline. **Late submissions shall not be accepted.**

RFP responses will be publicly opened and firm names read aloud in the Town Hall Council Chambers on the due date/time noted above. The selection of the successful respondent(s) shall be at the Town's discretion and shall be made in a prompt manner after the receipt and evaluation of all RFP responses. The Town of Davie reserves the right to reject any and all submissions, to waive any and all irregularities in any submission, and to make awards in the best interest of the Town.

Brian K. O'Connor
Procurement Manager
Town of Davie

*Pursuant to Florida Statutes 119.071, sealed bids, proposals or replies by an agency pursuant to a competitive solicitation are exempt from inspection until such time as the agency provides notice of an intended decision or until thirty (30) days after the opening of the bids, proposals, or final replies, whichever is earlier.*

# Exhibit "B"



Prepared for:



# Town of Davie, FL

## RFP No. B-17-149 Advanced Metering Infrastructure System

September 22nd 2017

**By:**
**Benjamin Jacobs – Local Contact**
**Zeb Wright – Authorized to Represent**

**Ferguson Waterworks Meter and Automation**
1950 NW 18th St
Pompano Beach, FL 33069
Cell: (561) 386-8541
Email: Benjamin.Jacobs@Ferguson.com





# Table of Contents

- Section 1 – Table of Contents                                                             1
- Section 2 – Letter of Interest                                                             2
- Section 3 – Qualifications, Experience and Ability                                         4
- Section 4 – Project Approach, Execution and Implementation Plan for the Town              17
- Section 5 – Support and Customer Service                                                  25
- Section 6 – Previous Experience of the Proposed Key Personnel                             30
- Section 7 – Financial Capability                                                          32
- Section 8 – Client References and Past Performance                                        39
- Section 9 – Price Proposal and Warranty                                                   42
- Section 10 – Business Structure & Professional Registration Certificates                  65
- Section 11 – Additional Information                                                       70
  - Appendix A - Exceptions and Clarifications                                              71
  - Appendix B - Technical Requirements                                                     72
  - Appendix C - Endpoint Acceptance Plan                                                  105
  - Appendix D - Interface Acceptance Plan                                                 109
  - Appendix E - Product Specification Sheets                                              114
  - Appendix F - UMS Information                                                           131
  - Appendix G - Required Forms                                                            144



Town of Davie – Procurement Division
6591 Orange Drive,
Davie, FL 33314

1950 NW 18th St
Pompano Beach, FL 33069
P: (954) 973-8100
F: (954) 917-3134

September 22nd, 2017

RE: RFP B-17-149 Advanced Metering Infrastructure (AMI) Project

Dear Mr. Brian K O'Connor, C.P.M.,

Ferguson Waterworks is pleased to submit the following comprehensive response to the Town of Davie RFP # B-17-149 Advanced Metering Infrastructure Project. Based on a detailed review of requirements, we have outlined a detailed, strategically structured response with the intent to surpass the town's current needs and to provide a reliable system that supports future smart-utility solution specifications.

Ferguson proposes the Mi.Net® AMI solution from Mueller Systems, which is an efficient AMI and MDM system backed by innovation and superior local service that is critical to your goals of improving the meter reading process, increasing billing accuracy, satisfying the customer's expectations and gaining overall system control. These improvements, combined with the cost savings in an advanced automated system, will enable the town to manage the water distribution system more effectively and responsibly. Mueller Systems' advanced AMI system confidently offers the functionality and cost-effectiveness needed to achieve the town's current and future goals. In addition to our strong relationship with Mueller Systems, we have carefully selected an experienced installation partner, Utility Metering Solutions (UMS), who shares our mission to deliver quality work with extreme professionalism.

Ferguson Enterprises, Inc. was founded in 1953 with several locations dedicated to servicing smaller plumbing contractors. From this modest start, Ferguson has raised the bar for industry standards as the top-rated and largest wholesale supplier of commercial and residential plumbing supplies in the U.S. Although our expertise goes beyond plumbing, we are a diverse distributor that spans multiple businesses including Meter & Automation, Waterworks, Plumbing, HVAC/R, Fire & Fab and Industrial. Over the last 63 years, we have thrived from a local plumbing distributor to a $13 billion dollar company exceeding 1,400 locations and more than 24,000 associates nationwide. We pride ourselves on delivering world-class service and our customers know that "nobody expects more from us than we do". More than just a tagline, this is a cultural belief that is demonstrated every day through exceptional customer service, wide product selection and expansive industry knowledge. Ferguson Enterprises is headquartered in Newport News, VA. On the Waterworks side, your local Pompano Beach, Florida branch represents just one of 200 Ferguson Waterworks locations nationwide. For added expertise in regards to water meters and AMR/AMI technologies, Ferguson invested in the creation of the Meter and Automation Division in 2010.

Ferguson is ultimately the best AMI partner for the Town of Davie. Our business is driven by focused, aggressive growth in the water infrastructure and metering space and we recruit and train the best people to support our long-term AMR/AMI platform. The Ferguson project team for the Town of Davie will include local AMI Specialist Ben Jacobs, Integration Specialist Bruce Kelly and local Municipal Sales Rep Drew Petonick. With over 11 years of experience, Ben Jacobs serves South Florida Municipalities and is locally-based in Boca Raton. Bruce Kelly, who has been with Ferguson for 19 years is based in Jacksonville, Florida and has played a vital role in successfully deploying over 15 AMR and AMI projects throughout the Southeastern United States. Drew Petonick, based in Lake Worth, is a 14 year Ferguson veteran with experience contributing to the deployment of AMR and AMI Systems. Having extended team members on-site and readily available for urgent matters or a training refresher is something we consider part of our value proposition. The Town of Davie currently annually spends $40,000 or more on waterworks products with Ferguson in Pompano Beach. We appreciate this business, loyalty and trust in carrying the same commitment to customer service and support into

2

our AMI partnership. Equally, we welcome communication between the town and all levels of Ferguson management when appropriate.  In addition to support from our extended project team identified in Tab 6, John Moses, Ferguson's General Manager of Meter & Automation is readily accessible to field any concerns or suggestions at any phase of system deployment.

**Similar AMI Projects**
Please refer to Tab 8 for more in-depth information on these references.
**Cooper City (FL) Utilities** - Water Meter Connections ~ 11,000
**Lee County (FL) Utilities** - Water Meter Connections ~ 78,990
**Pace (FL) Water System** - Water Meter Connections ~ 18,000
**South Walton (FL) Utility Co., Inc.** - Water Meter Connections ~ 9,200
**Citrus County (FL) Utilities** - Water Meter Connections ~ 22,000

**Ferguson Project Team - Projects deploying:**
Cooper City Utilities (FL), Lee County Utilities (FL), Pace Water System (FL), South Walton Utility Co., Inc. (FL), Citrus County (FL), Stockbridge (GA), Colonial Beach (VA), Dawsonville (GA), Pelham (GA) and Riviera Beach (FL) - Under contract negotiations.

The launch of an AMI system for the Town of Davie requires careful consideration, as it impacts the wallet of each and every resident. The system you ultimately select must provide strong and stable performance, detailed accuracy and a user-friendly experience that exceeds and proves its value. Mi.Net® simply delivers – and it is equipped with an open architecture network that offers compatibility with other smart utility and smart city technologies. The Mi.Net® system delivers true two-way communications, allowing town personnel to obtain an on-demand read, disconnect or reconnect a service (using our remote disconnect meter), evaluate real-time alerts, process automatic meter swaps, transmit remote firmware updates, create customized district metering areas and provide the town's personnel with the capability to access the AMI system anywhere they have internet access and approved login credentials. It is our hope that this proposal conveys the forward-thinking vision and product development success of Mueller Systems as well as the service, support and project coordination capabilities of Ferguson.

Best Regards,

**Zeb Wright**
Business Development Manager - Mueller Systems
Ferguson Waterworks Meter & Automation Group
Cell: (214)-690-3604/ Email: Zeb.Wright@Ferguson.com

# Exhibit "C"

RESOLUTION NO. R 2018-205

A RESOLUTION OF THE TOWN OF DAVIE, FLORIDA, ACCEPTING THE RFP AWARD RECOMMENDATION FOR THE ADVANCED METERING INFRASTRUCTURE (AMI) SYSTEM, AWARDING A CONTRACT TO FERGUSON ENTERPRISES, INC., (RFP NO. B-17-149), AUTHORIZING THE MAYOR TO SIGN THE ASSOCIATED CONTRACTS FOR THE PROJECT WITH FERGUSON ENTERPRISES, INC. AND MUELLER SYSTEMS, LLC. AND AUTHORIZING THE EXPENDITURE OF FUNDS TO PAY FOR THE AMI SYSTEM PROJECT; PROVIDING FOR SEVERABILITY, PROVIDING FOR CONFLICTS, AND PROVIDING FOR AN EFFECTIVE DATE.

WHEREAS, the Town of Davie solicited bids through RFP No. B-17-149 for the AMI Metering and Infrastructure Project; and

WHEREAS, after proposal review and presentations by the short listed firms, the Review Committee submitted their final ranking and recommended contract negotiations with the number one ranked firm Ferguson Enterprises, Inc.; and

WHEREAS, Town Council authorized the Town Administrator or his designee to negotiate an agreement for the project (R2018-053); and

WHEREAS, after review, the Mayor and Town Council wishes to accept the negotiated agreement with Ferguson Enterprises, Inc. for materials, installation, and services and the contract with Mueller Systems, LLC for the AMI software; and

WHEREAS, the Town Council hereby authorizes the expenditure of funds to pay for the AMI System project.

NOW, THEREFORE, BE IT RESOLVED BY THE TOWN COUNCIL OF THE TOWN OF DAVIE, FLORIDA:

SECTION 1.  The above recitals are hereby adopted by the Town Council of the Town of Davie as its legislative findings relative to the subjects and matters set forth in this Resolution.

SECTION 2. The Town Council of the Town of Davie does hereby approve the contract with Ferguson Enterprises, Inc., in the amount of $3,765,764.13 for the Advanced Metering Infrastructure (AMI) System project and authorizes the Mayor to execute the contract with Ferguson Enterprises, Inc., for materials, installation, and services and the contract with Mueller Systems, LLC for the AMI software and hardware maintenance. The Town Council of the Town of Davie does hereby approve the expenditure of $3,765,764.13 for the Advanced Metering Infrastructure (AMI) System project as outlined in the attached contracts and for Mueller Systems, LLC for the software and hardware maintenance as approved within the department's annual budget each year.

SECTION 3. The Town Council of the Town of Davie does hereby approve an additional $188,288.21 in funding to cover the cost of additional quantities, unforeseen problems, or incidentals (five percent project contingency).

SECTION 4. The Town Council recognizes that annual fees associated with Mueller Systems software and hardware maintenance will commence with the second year and will renew automatically on a year to year basis in accordance with the CPI index as outlined in the agreement, unless terminated in writing by either party at least ninety (90) days prior to the end of the then- current term; and

SECTION 5. The Town will evaluate the proposed Consumer Portal Software once the project has been implemented to determine if the software solution is in the best interest of the Town. If the Town finds that the software is acceptable, staff will bring forth a final agreement for the Town Council's approval.

SECTION 6. The funding for this project is available in the Utilities Department- capital related accounts and software and hardware maintenance will be funded annually through the department's operating budget.

SECTION 7.  All resolutions or parts of resolutions in conflict with any of the provisions of this Resolution are hereby repealed.

SECTION 8. Effective Date. This Resolution shall take effect immediately upon passage and adoption.

PASSED AND ADOPTED THIS 25TH DAY OF JULY, 2018.

MAYOR/COUNCILMEMBER

ATTEST:

TOWN CLERK

APPROVED THIS 25TH DAY OF JULY, 2018.

Approved as to form and legality:

TOWN ATTORNEY

R 2018-205

# Exhibit "D"

**TOWN OF DAVIE**

**CONTRACT FOR INSTALLATION AND SERVICES**

**THIS CONTRACT** made and entered into this _25_ day of _July_, _206_ by and between Ferguson Enterprises, Inc., hereinafter referred to as "**CONTRACTOR,**" whose mailing address is 1950 NW 18 St., Pompano Beach, FL 33069 and the Town of Davie Utilities Department, hereinafter referred to as the "**TOWN**", whose address is 7351 SW 30 Street, Davie, FL 33314.

In consideration of the mutual promises contained herein, the TOWN and the CONTRACTOR agree as follows:

## ARTICLE 1 - SERVICES

1.  CONTRACTOR responded to Town of Davie RFP No. B-17-149 to provide Advance Metering Infrastructure installation and services. The language prescribed in RFP No. B-17-149, is hereby incorporated and attached as Exhibit "D" and such language shall prevail in any conflict or dispute to the language in this document. The CONTRACTOR agrees to provide Advance Metering Infrastructure installation and services (RFP No. B-17-149), at the rates defined in "Exhibit A – Installation and Services Pricing". The pricing listed in Exhibit "A" shall be guaranteed until June 30, 2020. After June 30, 2020, the price may be adjusted based upon the relevant 12 month net change to the U.S. Bureau of Labor Statistics. The CONTRACTOR's responsibility under this Contract is to furnish all installation and services for completing specific tasks as identified in Exhibit "B" - Ferguson Enterprises, Inc. Proposal, dated September 22, 2017. The specifications for the project are more specifically set out in the Request for Proposal (RFP) No. B-17-149 and Addendums 1 through 4 attached as Exhibit "D". The CONTRACTOR shall honor all warranties and performance guarantee as noted in Exhibit "C".

The TOWN and the CONTRACTOR agree as follows:

## INSTALLATION

A.  The CONTRACTOR will furnish the labor necessary to install all metering endpoints, Network Hardware Installation, Installation Project Management, and Additional Installation Services as Requested with rates defined in Exhibit "A" – Installation and Services Pricing. CONTRACTOR and approved subcontractor will follow best-practice methods related to install, project management, safety and utility/citizen communication as reflected in Exhibit "B" – Ferguson Enterprises, Inc. Proposal, dated September 22, 2017.

B.  TAXES AND FEES. CONTRACTOR is subject to and responsible for paying fees to obtain all applicable CONTRACTOR or business licenses. TOWN will be responsible for any fees involved with providing 120V AC power to each relevant network infrastructure site, obtaining any permits, or approvals required by local, state or federal agencies to permit the project.

C.  CONTRACTOR will provide five (5) days of installation training for TOWN Staff. Additional procedures may be added to the scope if mutually agreed upon and accepted by both TOWN and CONTRACTOR, at no cost to the TOWN.

D.  LOCAL PREFERENCE/WORKFORCE LABOR. TOWN believes that the hiring of workforce labor by CONTRACTOR, to the maximum extent possible and be citizens within its boundaries. CONTRACTOR's participation with the TOWN is not required as a condition within this Contract, but rather an opportunity for greater support of the community of TOWN and CONTRACTOR in hiring local workforce.

E.  CLEANUP. CONTRACTOR shall cleanup, repair, restore, and otherwise return any site or location to the condition in which it was delivered to CONTRACTOR.

F.  COMPLETION. The date for final completion of the Project is twelve (12) months from after the New World Billing Software Interface and Infrastructure has been tested and approved by Ferguson and the Town of Davie and once the meter/endpoints installation begins ("Completion Date"), unless otherwise agreed to

1

in writing or as provided herein. The CONTRACTOR shall perform all work in conformance with the Contract Documents so as to complete the Project by the Completion Date. All materials and equipment provided shall be new, free from liens and covered by manufacturer warranties against defects. A copy of the manufacturer's and Contractor's Supplemental warranty is attached hereto as Exhibit "C".

The performance of the Contract will be completed as more specifically set out in the Enclosures and in the Request for Proposal No. B-17-149, including Addendums 1 through 4, are made a part hereof by Exhibit "D".

The TOWN's primary representative/liaison during the performance of this Contract shall be:

> Ronald Bolton, Project Manager
> Town of Davie Utilities
> 7351 SW 30 Street, Davie, FL 33314
> Phone: 954-327-3769
> Email address rbolton@davie-fl.gov

The secondary representative/liaison during the performance of this Contract shall be:

> Wendy Mlodzinski, Customer Service Supervisor,
> Town of Davie Utilities
> 6591 Orange Drive, Davie, FL 33314
> Phone: 954-797-1068
> Email address wmlodzinski@davie-fl.gov

## ARTICLE 2 - SCHEDULE

A. _Time of Completion_ - Construction work must begin within ten (10) calendar days from the date of receipt of official notice to proceed; provided the TOWN has received proof of insurance as set forth in Article 11 and a Performance and Surety Bond as set forth in Article 31 in a form satisfactory to the TOWN. Construction work shall be carried on at a rate to insure its full completion within three hundred and sixty five (365) calendar days from the date of official notice to proceed, the rate of progress and time of completion being essential conditions of this Contract.

B. _Deduction for not completing on time_ - If the contract work is not fully complete according to the terms of this Contract within the limits herein stipulated, the CONTRACTOR shall pay the TOWN, not as a penalty, but as liquidated damages, a sum equal to two hundred fifty dollars (**$250.00**) for each day elapsing between the expiration of such time limit and the date of full completion, providing, however, that the time limits herein stated are subject to extension without payment of damages, as provided in Article 17, herein. It is agreed that these liquidated damages are a good faith and reasonable pre-estimate of TOWN's actual damages due to delay by CONTRACTOR because it is difficult, if not impossible, to accurately estimate the actual damages suffered by TOWN due to any such delay.

C. _Reports_ - Reports and other items shall be delivered or completed in accordance with the detailed schedule.

## ARTICLE 3 - PAYMENTS TO CONTRACTOR

A. Generally - The TOWN agrees to compensate the CONTRACTOR in accordance with the fee proposal set forth in Exhibit "A". The total and cumulative amount of this Contract shall not exceed the amount of one million, sixteen thousand, eighty dollars and fifteen cents ($1,016,080.15).

B. The TOWN shall not reimburse the CONTRACTOR for any travel costs incurred as a direct result of the CONTRACTOR providing deliverables to the TOWN in pursuance of the scope of work contained in Exhibit A, without specific, prior written approval of the TOWN.

2

PWD

C. <u>Progress Invoices</u> - No later than the 20th day of every month, the CONTRACTOR shall prepare and submit, on a form approved by the TOWN'S representative, a detailed estimate and invoice of work which has been completed from the start of the job up to and including the last day of the preceding month, together with such supporting evidence of the expenditures as required by the CONTRACTOR. The CONTRACTOR shall also submit with each invoice an updated revised work schedule. The CONTRACTOR shall include in the Progress Invoice a Warranty of Title indicating that as of the date of Progress Invoice that all work, materials, and equipment covered by the Progress Invoice passes to the TOWN at the time of payment of the Progress Invoice and that all laborers, materialmen, and subcontractors have been paid in full for all work, materials, and equipment covered by the Progress Invoice and also provide Partial Releases of Lien and/or Partial Releases of Payment Bond from all laborers, materialmen, and subcontractors as to such work, materials, and equipment covered by the Progress Invoice. TOWN has no obligation to pay any Progress Invoice until both a Warranty of Title and Partial Releases of Lien and/or Partial Releases of Payment Bond are provided to TOWN.

D. <u>Progress Payments</u> – Progress Invoices received from the CONTRACTOR pursuant to this Contract will be reviewed and approved by the TOWN representative within ten days of receipt of the invoice, indicating that services have been rendered in conformity with the Contract unless the TOWN requires clarification or a correction of the invoice. The invoices will be sent to the Finance Department for payment. Invoices will normally be paid within thirty (30) days following the TOWN representative's approval.

E. <u>Payment of Expenses</u> - All requests for payment of expenses eligible for reimbursement under the terms of this Contract, if any, shall include copies of said receipts, invoices, or other documentation acceptable to the Finance Department. Such documentation shall be sufficient to establish that the expense was actually incurred and necessary in the performance of the scope of work described in this Contract. Long distance telephone calls shall identify the person(s) called, purpose of call, time and costs. Mileage charges shall identify the destination, number of miles, rate, and purpose of travel. Duplication charges shall describe the documents, purpose of duplicating, and rate charged. Any travel, per diem, mileage, meals, or lodging expenses which may be reimbursable under the terms of this Contract, if any, will be paid in accordance with the rates and conditions set forth in Section 112.061, Florida Statutes.

<u>Final Invoice</u> – In order for both parties herein to close their books and records, the CONTRACTOR will clearly state "<u>Final Invoice</u>" on the CONTRACTOR's final/last billing to the TOWN. This certifies that all services have been properly performed and all charges and costs have been invoiced to the TOWN. Since this account will thereupon be closed, any and other future charges, if not properly included in this Final Invoice, are waived by the CONTRACTOR and the TOWN shall have no obligations for other costs or expenses thereafter. Further, the CONTRACTOR shall include in the Final Invoice a Warranty of Title indicating that all work, materials, and equipment covered by this Contract passes to the TOWN at the time of payment of the Final Invoice and that all laborers, materialmen, and subcontractors have been paid in full for all work, materials, and equipment covered by Contract and also provide Final Releases of Lien and/or Final Releases of Payment Bond from all laborers, materialmen, and subcontractors as to such work, materials, and equipment covered by the Contract. The TOWN has no obligation to pay the Final Invoice until both a Warranty of Title and Final Releases of Lien and/or Final Release of Payment Bond are provided to the TOWN.

## ARTICLE 4 - TRUTH-IN-NEGOTIATION CERTIFICATE

Signature of this Contract by the CONTRACTOR shall also act as the execution of a truth-in-negotiation certificate certifying that the wage rates, over-head charges, and other costs used to determine the compensation provided for in this Contract are accurate, complete and current as of the date of the Contract and no higher than those charged to the CONTRACTOR'S most favored customer for the same or substantially similar service.

The said rates and costs shall be adjusted to exclude any significant sums should the TOWN determine that the rates and costs were increased due to inaccurate, incomplete or non-current wage rates or due to inaccurate representations of fees paid to outside CONTRACTORs. The TOWN shall exercise its rights under this Article 4 within three (3) years following final payment.

3

## ARTICLE 5 - TERMINATION

This Contract may be canceled by the CONTRACTOR upon thirty (30) days prior written notice to the TOWN'S representative in the event of substantial failure by the TOWN to perform in accordance with the terms of this Contract through no fault of the CONTRACTOR; provided the TOWN fails to cure same within that thirty (30) day period.  This Contract may also be terminated, in whole or in part, by the TOWN, with or without cause, immediately upon written notice to the CONTRACTOR. Unless the CONTRACTOR is in breach of this Contract, the CONTRACTOR shall be paid for services rendered to the TOWN'S satisfaction through the date of termination.  After receipt of a Termination Notice and except as otherwise directed by the TOWN, the CONTRACTOR shall:

    a.   Stop work on the date and to the extent specified.

    b.   Terminate and settle all orders and subcontracts relating to the performance of the terminated work.

    c.   Transfer all work in process, completed work, and other materials related to the terminated work to the TOWN.

    d.   Continue and complete all parts of the work that have not been terminated.

## ARTICLE 6 - PERSONNEL

The CONTRACTOR represents that it has, or will secure at its own expense, all necessary personnel required to perform the services under this Contract.  Such personnel shall not be employees of or have any contractual relationship with the TOWN.

All of the services required hereunder shall be performed by the CONTRACTOR or under its supervision, and all personnel engaged in performing the services shall be fully qualified and licensed and, if required, authorized or permitted under state and local law to perform such services.

Any changes or substitutions in the CONTRACTOR's key personnel, as may be listed in Exhibit "B", must be made known to the TOWN's representative and written approval, at TOWN's sole discretion, must be granted by the TOWN's representative before said change or substitution can become effective.

The CONTRACTOR warrants that all services shall be performed by skilled, properly licensed, and competent personnel to the highest professional standards in their respective field(s).

The CONTRACTOR agrees that it is fully responsible to the TOWN for the acts and omissions of subcontractors and of persons either directly or indirectly employed by the CONTRACTOR. Nothing contained herein shall create any contractual relationship between any subcontractor and the TOWN.

All of the CONTRACTOR's personnel (and all Subcontractors) while on TOWN premises will comply with all TOWN requirements governing conduct, safety and security.

## ARTICLE 7 - SUBCONTRACTING

The TOWN reserves, at its sole discretion and for any reason, the right to accept the use of a subcontractor or to reject the selection of a particular subcontractor by CONTRACTOR and to inspect all facilities and approve all qualifications of any subcontractor in order to make a determination as to the capability of the subcontractor to perform properly under this Contract. Any changes or substitutions in the CONTRACTOR's subcontractors must be made known to the TOWN's representative and written approval must be granted by the TOWN's representative before said change or substitution can become effective. The CONTRACTOR is encouraged to seek minority and women business enterprises for participation in subcontracting opportunities. Further,

If a subcontractor fails to perform or make progress, as required by this Contract, and it is necessary to replace the subcontractor to complete the work in a timely fashion, the CONTRACTOR shall promptly do so, subject to acceptance, in writing and at the

TOWN's sole discretion, of the new subcontractor by the TOWN. The TOWN shall not unreasonably deny the request. However, the CONTRACTOR must demonstrate that the subcontractor being replaced is unable to perform the work, is performing the work poorly or untimely, or is unable to meet the requirements of the contract with the TOWN. The TOWN will not address issues related to the CONTRACTOR's specific agreement with the subcontractor including issues of pricing.

If subcontractor(s) are used, the CONTRACTOR shall use only licensed and insured subcontractor(s), and shall require any subcontractor, as may be applicable, to provide a payment and performance bond. All subcontractors shall be required to promptly make payments to any person who, directly or indirectly, provides services or supplies under this Contract.

The CONTRACTOR shall be responsible for the performance of all subcontractors.

## ARTICLE 8 - FEDERAL AND STATE TAX

The TOWN is exempt from payment of Florida State Sales and Use Taxes. The TOWN will sign an exemption certificate submitted by the CONTRACTOR. The CONTRACTOR shall not be exempted from paying sales tax to its suppliers for materials used to fulfill contractual obligations with the TOWN, nor is the CONTRACTOR authorized to use the TOWN'S Tax Exemption Number in securing such materials.

The CONTRACTOR shall be responsible for payment of its own and its share of its employees' payroll, payroll taxes, and benefits with respect to this Contract.

## ARTICLE 9 - AVAILABILITY OF FUNDS

The TOWN's performance and obligation to pay under this Contract is contingent upon an annual appropriation for its purpose by the TOWN OF DAVIE TOWN COUNCIL.

## ARTICLE 10 - INSURANCE

A. Prior to execution of this Contract by the TOWN, the CONTRACTOR shall provide certificates evidencing insurance coverages as required hereunder. All insurance policies shall be issued by companies authorized to do business under the laws of the State of Florida. The Certificates shall clearly indicate that the CONTRACTOR has obtained insurance of the type, amount, and classification as required for strict compliance with this ARTICLE and that no material change or cancellation of the insurance shall be effective without thirty (30) days prior written notice to the TOWN's representative. Compliance with the foregoing requirements shall not relieve the CONTRACTOR of its liability and obligations under this Contract.

B. The CONTRACTOR shall maintain during the term of this Contract, standard Professional Liability Insurance in the minimum amount of $1,000,000.00 per occurrence.

C. The CONTRACTOR shall maintain, during the life of this Contract, commercial general liability, including contractual liability, insurance in the amount of $500,000.00 per occurrence to protect the CONTRACTOR from claims for damages for bodily and personal injury, including wrongful death, as well as from claims of property damages which may arise from any operations under this Contract, whether such operations be by the CONTRACTOR or by anyone, directly or indirectly, employed by or contracting with the CONTRACTOR.

D. The CONTRACTOR shall maintain, during the life of this Contract, comprehensive automobile liability insurance in the minimum amount of $500,000.00 combined single limit for bodily injury and property damages liability to protect the CONTRACTOR from claims for damages for bodily and personal injury, including death, as well as from claims for property damage, which may arise from the township, use, or maintenance of owned and non-owned automobiles including, but not limited to, leased and rented automobiles, whether such operations be by the CONTRACTOR or by anyone, directly or indirectly, employed by the CONTRACTOR.

E.   The parties to this Contract shall carry Workers' Compensation Insurance and Employer's Liability Insurance for all employees as required by Florida Statutes.  In the event that a party does not carry Workers' Compensation Insurance and chooses not to obtain same, then such party shall. in accordance with Section 440.05, Florida Statutes, apply for and obtain an exemption authorized by the Department of Insurance and shall provide a copy of such exemption to the TOWN.

F.   All insurance, other than Professional Liability and Workers' Compensation, to be maintained by the CONTRACTOR shall specifically include the TOWN as an "Additional Insured." Further, if TOWN is being reimbursed in whole or in part for the cost of the work contemplated by the Contract by any third party, including but not limited to, any County, State, or Federal agency, CONTRACTOR, at TOWN's request, will also list any such third party as an "Additional Insured" on all insurance.

## ARTICLE 11 - INDEMNIFICATION

To the extent allowed by law, including section 725.06(2), Florida Statutes, the CONTRACTOR shall indemnify and hold harmless the TOWN, its agents, officers, and employees from and against any and all claims, liability, losses, and/or causes of action which may arise from any negligent act, recklessness, or intentional wrongful conduct or omission of the CONTRACTOR, its agents, officers, or employees in the performance of services under this Contract, including, but not limited to, to all attorneys' fees and costs incurred by TOWN.

The CONTRACTOR further agrees to indemnify and hold harmless the TOWN, its agents, officers and employees from and against any claim, demand or cause of action of whatsoever kind or nature arising out of any conduct or misconduct of the CONTRACTOR not included in the paragraph above and for which the TOWN, its agents, officers, or employees are alleged to be liable, including, but not limited to, to all attorneys' fees and costs incurred by TOWN.

CONTRACTOR shall pay all claims, losses, liens, fines, settlements or judgments of any nature whatsoever in connection with the foregoing indemnifications including, but not limited to, all costs, expert witness fees, reasonable attorney's fees, and court and/or arbitration costs.  These indemnifications shall survive the term of this Contract or any renewal thereof.

Nothing contained in this Article shall be construed or interpreted as consent by the TOWN to be sued, nor as a waiver of sovereign immunity beyond the waiver provided in Section 768.28, Florida Statutes.

## ARTICLE 12 - SUCCESSORS AND ASSIGNS

The TOWN and the CONTRACTOR each binds itself and its partners, successors, executors, administrators and assigns to the other party of this Contract and to the partners, successors, executors, administrators and assigns of such other party, in respect to all covenants of this Contract. Neither the TOWN nor the CONTRACTOR shall assign, sublet, convey or transfer its interest in this Contract without the written consent of the other.  Nothing herein shall be construed as creating any personal liability on the part of any officer or agent of the TOWN which may be a party hereto, nor shall it be construed as giving any rights or benefits hereunder to anyone other than the TOWN and the CONTRACTOR.

## ARTICLE 13 – DISPUTE RESOLUTION, VENUE, AND REMEDIES

All claims arising out of this Contract or its breach shall be submitted first to mediation in accordance with the local rules for mediation in Broward County, Florida. The parties shall share the mediator's fee equally. The mediation shall be held in Broward County, unless another location is mutually agreed upon.  Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

This Contract shall be governed by the laws of the State of Florida. Any and all legal action necessary to enforce the Contract will be exclusively held in Broward County, Florida. No remedy herein conferred upon any party is intended to be exclusive of any other remedy, and each and every such remedy shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute or otherwise.  No single or partial exercise by any party of any right, power, or remedy hereunder shall preclude any other or further exercise thereof.

## ARTICLE 14-REMEDIES

No remedy herein conferred upon any party is intended to be exclusive of any other remedy, and each and every such remedy shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute or otherwise.  No single or partial exercise by any party of any right, power, or remedy hereunder shall preclude any other or further exercise thereof.

## ARTICLE 15 – CONFLICT OF INTEREST

The CONTRACTOR represents that it presently has no interest and shall acquire no interest, either direct or indirect, which would conflict in any manner with the performance or services required hereunder, as provided for in Florida Statutes, Section 112.311. The CONTRACTOR further represents that no person having any such conflicting interest shall be employed for said performance.

The CONTRACTOR shall promptly notify the TOWN's representative, in writing, by certified mail, of all potential conflicts of interest for any prospective business association, interest or other circumstance which may influence or appear to influence the CONTRACTOR's judgment or quality of services being provided hereunder.  Such written notification shall identify the prospective business association, interest or circumstance, the nature of work that the CONTRACTOR may undertake and request an opinion of the TOWN as to whether the association, interest or circumstance would, in the opinion of the TOWN, constitute a conflict of interest if entered into by the CONTRACTOR.  The TOWN agrees to notify the CONTRACTOR of its opinion by certified mail within thirty (30) days of receipt of notification by the CONTRACTOR. If, in the opinion of the TOWN, the prospective business association, interest or circumstance would not constitute a conflict of interest by the CONTRACTOR, the TOWN shall so state in the notification and the CONTRACTOR shall, at its option, enter into said association, interest or circumstance and it shall be deemed not in conflict of interest with respect to services provided to the TOWN by the CONTRACTOR under the terms of this Contract.

## ARTICLE 16 – DELAYS AND EXTENSION OF TIME

The CONTRACTOR shall not be considered in default by reason of a delay in timely performance if such delay and failure arises out of causes reasonably beyond the control of the CONTRACTOR or its subcontractors and without their fault or negligence. Such causes include, but are not limited to: acts of God; natural or public health emergencies; labor disputes; freight embargoes; and abnormally severe and unusual weather conditions. Upon the CONTRACTOR's request, the TOWN shall consider the facts and extent of any such delay and failure to timely perform the work for reason beyond the control of the CONTRACTOR and, if the CONTRACTOR's delay and failure to timely perform was without it or its subcontractors' fault or negligence, as determined by the TOWN in its sole discretion, the time of completion shall be extended for any reasonable time that the TOWN, in its sole discretion, may decide; subject to the TOWN's rights to change, terminate, or stop any or all of the work at any time.

If the CONTRACTOR is delayed at any time in the progress of the work by any act or neglect of the TOWN or its employees, or by any other CONTRACTOR employed by the TOWN, or by changes ordered by the TOWN or in an unusual delay in transportation, unavoidable casualties, or any causes beyond the CONTRACTOR'S control, or by delay authorized by the TOWN pending negotiation or by any cause which the TOWN, in its sole discretion, shall decide justifies the delay, then the time of completion shall be extended for any reasonable time the TOWN, in its sole discretion, may decide.

No extension of time shall be made for any delay occurring more than seven (7) days before a claim therefore is made in writing to the TOWN.  In the case of continuing cause of delay, only one (1) claim is necessary.

If no schedule or other agreement sets forth the dates by which drawing(s) shall be furnished, then no claims for delay shall be allowed because of failure to furnish such drawing(s), until two (2) weeks after demand for the drawings and not then unless said claim is reasonable.

The CONTRACTOR's sole remedy for a delay in completion of the work for any reason will be an extension of time to complete the work and CONTRACTOR specifically waives any right to seek any monetary damages or losses for a delay in completion of the work, including, but not limited to, waiving any right to seek monetary amounts for lost profits, additional overhead, salaries, lost productivity, efficiency losses, or any other alleged monetary losses which may be allegedly suffered by CONTRACTOR due to a delay in completion of the work. If endpoint installation is delayed by the Town, the only remedy for Ferguson is the granting of additional time for completion, at the Town's discretion. A remedy period will be agreed upon between the Town and Ferguson. Beyond the remedy period, the Town and Ferguson will negotiation costs incurred from the installation subcontractor due to the delay, to be paid by the Town.

## ARTICLE 17 - INDEBTEDNESS

The CONTRACTOR shall not pledge the TOWN's credit or make it a guarantor of payment or surety for any contract, debt, obligation, judgment, lien, or any form of indebtedness. The CONTRACTOR further warrants and represents that it has no obligation or indebtedness that would impair its ability to fulfill the terms of this Contract.

## ARTICLE 18 - DISCLOSURE AND TOWNSHIP OF DOCUMENTS

The CONTRACTOR shall deliver to the TOWN's representative for approval and acceptance, and before being eligible for final payment of any amounts due, all documents and materials prepared by and for the TOWN under this Contract.

All written and oral information not in the public domain or not previously known, and all information and data obtained, developed, or supplied by the TOWN or at its expense will be kept confidential by the CONTRACTOR and will not be disclosed to any other party, directly or indirectly, without the TOWN's prior written consent unless required by a lawful order. All drawings, maps, sketches, programs, data base, reports and other data developed, or purchased, under this Contract for or at the TOWN's expense shall be and remain the TOWN's property and may be reproduced and reused at the discretion of the TOWN.

The CONTRACTOR shall comply with Florida's Public Records Act, Chapter 119, Florida Statutes, and, if determined to be acting on behalf of the TOWN as provided under section 119.011(2), Florida Statutes, specifically agrees to:

A.   Keep and maintain public records required by the TOWN to perform the service.

B.   Upon request from the TOWN's custodian of public records or designee, provide the TOWN with a copy of the requested records or allow the records to be inspected or copied within a reasonable time at a cost that does not exceed the cost provided in Chapter 119, Florida Statutes, or as otherwise provided by law.

C.   Ensure that public records that are exempt or confidential and exempt from public records disclosure requirements are not disclosed except as authorized by law for the duration of this Contract and following completion of this Contract if the CONTRACTOR does not transfer the records to the TOWN.

D.   Upon completion of this Contract, transfer, at no cost, to the TOWN all public records in possession of the CONTRACTOR or keep and maintain public records required by the TOWN to perform the service. If the CONTRACTOR transfers all public records to the TOWN upon completion of the Contract, the CONTRACTOR shall destroy any duplicate public records that are exempt or confidential and exempt from public records disclosure requirements. If the CONTRACTOR keeps and maintains public records upon completion of the Contract, the CONTRACTOR shall meet all applicable requirements for retaining public records. All records stored electronically must be provided to the TOWN, upon request from the TOWN's custodian of public records or designee, in a format that is compatible with the information technology systems of the TOWN.

8

**IF THE CONTRACTOR HAS QUESTIONS REGARDING THE APPLICATION OF CHAPTER 119, FLORIDA STATUTES, TO THE CONTRACTOR'S DUTY TO PROVIDE PUBLIC RECORDS RELATING TO THIS CONTRACT, CONTACT THE CUSTODIAN OF PUBLIC RECORDS OR DESIGNEE AT EVELYN ROIG, TOWN CLERK, PHONE: 954-797-1011, EMAIL: EVELYN_ROIG@DAVIE-FL.GOV, OFFICE OF THE TOWN CLERK, 6591 ORANGE DRIVE, DAVIE, FLORIDA 33314**

## ARTICLE 19 - INDEPENDENT CONTRACTOR RELATIONSHIP

The CONTRACTOR is, and shall be, in the performance of all work, services and activities under this Contract, an Independent CONTRACTOR, and not an employee, agent, or servant of the TOWN. All persons engaged in any of the work or services performed pursuant to this Contract shall at all times, and in all places, be subject to the CONTRACTOR's sole direction, supervision, and control. The CONTRACTOR shall exercise control over the means and manner in which it and its employees perform the work, and in all respects the CONTRACTOR's relationship and the relationship of its employees to the TOWN shall be that of an Independent CONTRACTOR and not as employees or agents of the TOWN.

The CONTRACTOR does not have the power or authority to bind the TOWN in any promise, agreement or representation other than as specifically provided for in this Contract.

## ARTICLE 20 - CONTINGENT FEES

The CONTRACTOR warrants that it has not employed or retained any company or person, other than a bona fide employee working solely for the CONTRACTOR to solicit or secure this Contract and that it has not paid or agreed to pay any person, company, corporation, individual, or firm, other than a bona fide employee working solely for the CONTRACTOR, any fee, commission, percentage, gift, or any other consideration contingent upon or resulting from the award or making of this Contract.

## ARTICLE 21 - ACCESS AND AUDITS

The CONTRACTOR shall maintain adequate records to justify all charges, expenses, and costs incurred in estimating and performing the work for at least three (3) years after completion of this Contract. The TOWN shall have access to such books, records, and documents as required in this Article for the purpose of inspection or audit during normal business hours, at the CONTRACTOR's place of business. Audit rights would be limited to records directly related to the agreement and the transactions set forth therein.

## ARTICLE 22 - NONDISCRIMINATION

The CONTRACTOR warrants and represents that all of its employees are treated equally during employment without regard to race, color, religion, disability, sex, age, national origin, ancestry, political affiliation, marital status, handicap, or sexual orientation. Further, CONTRACTOR shall not discriminate or permit discrimination against any employee or an applicant for employment on the basis of race, color, sex, religion, political affiliation, natural origin, ancestry, marital status, sexual orientation or handicap.

## ARTICLE 23 - ENFORCEMENT COSTS

All parties shall be responsible for their own attorney fees, court costs and expenses if any legal action or other proceeding is brought for any dispute, disagreement, or issue of construction or interpretation arising hereunder whether relating to the Contract's execution, validity, the obligations provided therein, or performance of this Contract, or because of an alleged breach, default or misrepresentation in connection with any provisions of this Contract.

## ARTICLE 24 – LICENSES, APPROVALS AND PERMITS

The CONTRACTOR hereby represents and warrants that it has and will continue to maintain all licenses and approvals required to conduct its business, and that it will at all times conduct its business activities in a reputable manner. This includes, but is not limited to, maintaining all licenses and performing all the duties required under Section 489.128, Florida Statutes. Proof of such licenses and approvals shall be submitted to the TOWN's representative upon request.

The CONTRACTOR shall be solely responsible for obtaining, paying for, and complying with all necessary permits, licenses, approvals and authorizations required for any work done pursuant to this Contract from any federal, state, regional, county or TOWN agency.

## ARTICLE 25 - SEVERABILITY

If any term or provision of this Contract, or the application thereof to any person or circumstances shall, to any extent, be held invalid or unenforceable, the remainder of this Contract, or the application of such terms or provisions, to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected, and every other term and provision of this Contract shall be deemed valid and enforceable to the extent permitted by law.

## ARTICLE 26 - PUBLIC ENTITY CRIMES

As provided in Sections 287.132-133, Florida Statutes, by entering into this Contract or performing any work in furtherance hereof, the CONTRACTOR certifies that it, its affiliates, suppliers, subcontractors and CONTRACTORs who will perform hereunder, have not been placed on the convicted vendor list maintained by the State of Florida Department of Management Services within the 36 months immediately preceding the date hereof. This notice is required by F.S. 287.133(3)(a).

## ARTICLE 27 - MODIFICATIONS OF WORK

The TOWN reserves the right to make changes in the Scope of Work, including alterations, reductions therein or additions thereto. Upon receipt by the CONTRACTOR of the TOWN's notification of a contemplated change, the CONTRACTOR shall, in writing: (1) provide a detailed estimate for the increase or decrease in cost due to the contemplated change; (2) notify the TOWN of any estimated change in the completion date; and, (3) advise the TOWN if the contemplated change shall affect the CONTRACTOR's ability to meet the completion dates or schedules of this Contract.

If the TOWN so instructs in writing, the CONTRACTOR shall suspend work on that portion of the Scope of Work affected by a contemplated change, pending the TOWN's decision to proceed with the change.

If the TOWN elects to make the change, the TOWN shall initiate a Contract Amendment and the CONTRACTOR shall not commence work on any such change until such written amendment is signed by the CONTRACTOR and approved and executed by the TOWN's designated representative and approved by the TOWN COUNCIL FOR THE TOWN OF DAVIE.

## ARTICLE 28 - NOTICE

All notices required in this Contract shall be sent by certified mail, return receipt requested, and if sent to the TOWN shall be mailed (and emailed) to:

Renuka Mohammed-Bajnath, Acting Utilities Director
Town of Davie Utilities
7351 SW 30 Street, Davie, FL 33314
Phone: 954-327-3768
Email: renuka_bajnath@davie-fl.gov

10

PWD

and if sent to the CONTRACTOR shall be mailed (and emailed) to:

> Ben Jacobs, Ferguson AMI Specialist
> Ferguson Enterprises, Inc.
> 1950 NW 18th Street,
> Pompano Beach, Florida 33069
> Phone: 561- 386-8541
> Email: Benjamin.Jacobs@Ferguson.com

## ARTICLE 29 - ENTIRETY OF CONTRACTUAL AGREEMENT

The TOWN and the CONTRACTOR agree that this Contract and any attachments hereto or other documents as referenced in the Contract sets forth the entire agreement between the parties, that there are no promises or understandings other than those stated herein, and this Contract supersedes all prior oral and written agreements between the parties hereto with respect to the subject matter hereof. None of the provisions, terms and conditions contained in this Contract may be added to, modified, superseded or otherwise altered, except by written instrument executed by the parties hereto in accordance with Article 28 - Modifications of Work.

## ARTICLE 30 - SPECIAL CONDITIONS

All materials and supplies provided by CONTRACTOR shall be in strict accordance with the plans and specifications approved by the TOWN.

The CONTRACTOR shall furnish bonds and maintain said bonds throughout the duration of the project as provided for in Florida Statutes section 255.01 Et. Seq., covering the faithful performance of the Contract and payment of all obligations arising thereunder. The bonds shall be secured by the CONTRACTOR from a surety company licensed in the State of Florida with an "A-" rating or better in management and a "10" rating or better in strength as rated by Best's Key Rating Guide published by Alfred M. Best Company, Oldwick, New Jersey 08858.

The CONTRACTOR shall be required to provide Surety Bonds in the amount of one hundred percent (100%) of the Contract amount. The required premiums shall be paid for by the CONTRACTOR.

In addition to the above-minimum qualifications, the surety company must meet at least one of the following additional qualifications:

A. The surety company shall hold a current certificate or authority as an acceptable surety of federal bonds in accordance with the United States Department of Treasury Circular 570, Current Revision. The surety company shall provide the TOWN with satisfactory evidence that such excess risk has been protected in an acceptable manner.

B. The surety company shall have at least the following minimum ratings in the latest revision of Best's Key Rating Guide: Best's Policy Holders Ratings –A- (minimum); Best Financial Category – Class 1

C. For projects that do not exceed $500,000, the TOWN will accept bonds in accordance with section 287.0935, Florida Statutes.

D. If the surety is declared bankrupt, becomes insolvent, its right to do business in the State of Florida is terminated or it ceases to meet the requirements set forth above, the CONTRACTOR shall within ten (10) working days after notification by the TOWN substitute another bond and surety company, at no cost to the TOWN, meeting the above requirements.

## ARTICLE 31 – INSPECTION OF WORK

The TOWN's representative and the TOWN's Engineer shall at all times have access to work wherever it is, in preparation or progress, and the CONTRACTOR shall provide proper facilities for such access and for inspection.

If the specifications, the TOWN, the Engineer's instructions, laws, ordinances or any public authority requires any work to be specially tested or approved, the CONTRACTOR shall give the TOWN Representative and TOWN Engineer timely notice of its readiness for inspection. If any such work should be covered up by CONTRACTOR and TOWN Representative or TOWN Engineer desires to inspect or re-inspect such work for any reason, at the sole discretion of TOWN Representative or TOWN Engineer, such work must be uncovered for examination, at the CONTRACTOR's expense.

## ARTICLE 32– WARRANTY/GUARANTY

All materials and installation services by the CONTRACTOR under this Contract shall be fully guaranteed by the CONTRACTOR for a period of two (2) years from the date of final acceptance thereof by the TOWN. After the two year period, the CONTRACTOR provides a supplemental warranty and performance guarantee that shall govern. All warranties and performance guarantee are provided in Exhibit "C".

## ARTICLE 33 – PROTECTION OF WORK AND PROPERTY

The CONTRACTOR shall continuously maintain adequate protection of all work from damage, and shall protect such work and the TOWN's property from injury or loss arising during the term of the Contract. Except for any such damage, injury, or loss which may be directly due to errors caused by the TOWN or employees of the TOWN, the CONTRACTOR shall adequately protect adjacent property, as provided by the law, and shall provide guard fences, lights, and any other necessary materials to carry out such protection.

Until acceptance of the work by the TOWN, the TOWN's property shall be under the charge and care of the CONTRACTOR and the CONTRACTOR shall take every necessary precaution against injury or damage to the work by the action of the elements or from any other cause whatsoever, and the CONTRACTOR shall repair, restore and make good, without additional charge any work occasioned by any of the above causes before its completion and acceptance by the TOWN.

## ARTICLE 34 – TIME

The parties agree that time is of the essence in all respects under this Contract and failure by a party to complete performance within the time specified, or within a reasonable time if no time is specified herein or in the exhibits, shall, at the option of the other party without liability, in addition to any other rights or remedies, relieve the other party of any obligation to accept such performance.

## ARTICLE 35 - TERMINOLOGY AND CAPTIONS

All pronouns, singular, plural, masculine, feminine or neuter, shall mean and include the person, entity, firm or corporation to which they relate as the context may require. Wherever the context may require, the singular shall mean and include the plural and the plural shall mean and include the singular. The term "Contract" as used herein, as well as the terms "herein", "hereof", "hereunder", "hereinafter" and the like mean this Contract in its entirety and all exhibits, amendments and addenda attached hereto and made a part hereof. The captions and paragraph headings are for reference and convenience only and do not enter into or become a part of the context of this Contract, nor shall such headings affect the meaning or interpretation of this Contract.

## ARTICLE 36 - WAIVER

Failure of the TOWN to enforce or exercise any right(s) under this Contract shall not be deemed a waiver of the TOWN's right to enforce or exercise said right(s) at any time thereafter.

12

## ARTICLE 37 - PREPARATION

TOWN and CONTRACTOR acknowledge that each has had the benefit of counsel or the ability to retain counsel and full and free access to counsel in connection with the negotiation and execution of Contract, that each has consulted or could have consulted with counsel in connection with this Contract, and that each has had the opportunity, prior to execution, to read this Contract and fully understand all of its provisions. Should any provision in this Contract require judicial or quasi-judicial interpretation it is agreed that a Court or other dispute resolution forum interpreting or enforcing the same shall not apply a presumption that the terms hereof shall be more strictly construed against any party by reason of the rule construction that a document is to be construed more strictly against the party who itself or through its agent has prepared the same. TOWN and CONTRACTOR agree that this Contract is the product and result of a joint drafting.

## ARTICLE 38 - MATERIALITY

All provisions of the Contract shall be deemed material.  In the event CONTRACTOR fails to comply with any of the provisions contained in this Contract or exhibits, amendments and addenda attached hereto, said failure shall be deemed a material breach of this Contract and TOWN may at its option and without notice terminate this Contract. Any breach, however minor, constitutes a material breach in this language.  Ferguson requests a 10 day notice and a process to mutually discuss a real or perceived breach. The same process will be applicable to the Town.

## ARTICLE 39 - REPRESENTATIONS/BINDING AUTHORITY

CONTRACTOR has full power, authority and legal right to execute and deliver this Contract and perform all of its obligations under this Contract. By signing this Contract, Patrick Day hereby represents to the TOWN that he/she has the authority and full legal power to execute this Contract and any and all documents necessary to effectuate and implement the terms of this Contract on behalf of the party for whom he or she is signing and to bind and obligate such party with respect to all provisions contained in this  Contract.

## ARTICLE 40 - EXHIBITS

Each exhibit referred to in this Contract forms an essential part of this Contract. The exhibits, if not physically attached, should be treated as part of this Contract and are incorporated herein by reference.

## ARTICLE 41 - CONTRACT DOCUMENTS AND CONTROLLING PROVISIONS

This Contract consists of this contract, bid documents and installation design plans.  The CONTRACTOR agrees to be bound by all the terms and conditions set forth in this Contract and design plans.  To the extent that there exists a conflict between this Contract and design plans, the terms, conditions, covenants, and/or provisions of this Contract shall prevail. Wherever possible, the provisions of such documents shall be construed in such a manner as to avoid conflicts between provisions of the various documents.

## ARTICLE 42 - LEGAL EFFECT

This Contract shall not become binding and effective until approved, in writing, by the CONTRACTORS designated representative and the TOWN OF DAVIE.

## ARTICLE 43 - NOTICE OF COMPLAINTS OR SUITS

Each party will promptly notify the other of any complaint, claim, suit or cause of action threatened or commenced against it which arises out of or relates, in any manner, to the performance of this Contract. Each party agrees to cooperate with the other in any investigation either may conduct, the defense of any claim or suit in which either party is named, and shall do nothing to impair or invalidate any applicable insurance coverage.

13

## ARTICLE 44 – SURVIVABILITY

Any provision of this Contract which is of a continuing nature or imposes an obligation which extends beyond the term of this Contract shall survive its expiration or earlier termination.

## ARTICLE 45 – DEFAULT

Notwithstanding anything contained in this Contract to the contrary, the parties agree that, by way of inclusion and not limitation, the occurrence of any of the following shall be deemed a material event of default and shall be grounds for termination:

A.   The filing of a lien or claim of any kind by any subcontractor or third tier subcontractor including, but not limited to materialmen, suppliers, or laborers, upon any property, right of way, easement, other interest in land or right to use such land within the territorial boundaries of the TOWN which lien is not satisfied, discharged or contested in a court of law within thirty (30) days from the date of notice to the CONTRACTOR;

B.   The filing of any claim, including, but not limited to, a claim against any Payment Bond by any subcontractor or third tier subcontractor including, but not limited to materialmen, suppliers, or laborers, concerning the failure of the CONTRACTOR to pay any such subcontractor or third tier subcontractor including, but not limited to materialmen, suppliers, or laborers, for any work performed or materials supplied pursuant to this Contract;

C.   The filing of any judgment lien against the assets of CONTRACTOR related to the performance of this Contract which is not satisfied, discharged or contested in a court of law within thirty (30) days from the date of notice to the CONTRACTOR; or

D.   The filing of a petition by or against the CONTRACTOR for relief under the Bankruptcy Code, or for its reorganization or for the appointment of a receiver or trustee of the CONTRACTOR or the CONTRACTOR's property; or an assignment by CONTRACTOR for the benefit of creditors; or the taking possession of the property of the CONTRACTOR by any governmental officer or agency pursuant to statutory authority for the dissolution or liquidation of the CONTRACTOR; or if a temporary or permanent receiver or trustee shall be appointed for the CONTRACTOR or for the CONTRACTOR's property and such temporary or permanent receiver or Trustee shall not be discharged within thirty (30) days from the date of appointment.

The CONTRACTOR shall provide written notice to the TOWN of the occurrence of any event of default within ten (10) days of CONTRACTOR's notice of any such default.

## ARTICLE 46 - WAIVER OF SUBROGATION

CONTRACTOR hereby waives any and all rights to Subrogation against the TOWN, its officers, employees and agents for each required policy.  When required by the insurer, or should a policy condition not permit an insured to enter into a pre-loss agreement to waive subrogation without an endorsement, then the CONTRACTOR shall agree to notify the insurer and request the policy be endorsed with a Waiver of Transfer of Rights of Recovery Against Others, or its equivalent.  This Waiver of Subrogation requirement shall not apply to any policy, which a condition to the policy specifically prohibits such an endorsement, or voids coverage should the CONTRACTOR enter into such an agreement on a pre-loss basis.

## ARTICLE 47 - RIGHT TO REVIEW

The TOWN, by and through its Risk Management Department, in cooperation with the contracting/monitoring department, reserves the right to review, reject or accept any required policies of insurance, including limits, coverages, or endorsements, therein from time to time throughout the term of this Contract. The TOWN reserves the right, but not the obligation, to review and reject any insurer providing coverage because of poor financial condition or failure to operate legally. Ferguson will

14

provide copies as applicable to the Contract.

## ARTICLE 48 – SUBRECIPIENT REQUIREMENTS

CONTRACTOR agrees and recognizes that TOWN may be seeking reimbursement in whole or in part for the cost of the work contemplated by this Contract from a third party, including but not limited to, various County, State, and Federal agencies or subdivisions. The reimbursement sought by TOWN may be dependent upon, among other items, CONTRACTOR's compliance with the terms and conditions of this Contract and the furnishing of Subrecipient Requirement information by CONTRACTOR to TOWN. CONTRACTOR agrees to fully cooperate with TOWN in any requests of TOWN to fulfill TOWN's Subrecipient Requirements and to otherwise obtain the sought after reimbursement. CONTRACTOR agrees and recognizes that the failure to comply with all the terms and conditions of this Contract and the furnishing of Subrecipient Requirement information to TOWN by CONTRACTOR may result in the TOWN failing to obtain the sought after reimbursement in whole or in part for the cost of the work contemplated by this Contract and that such failure by the CONTRACTOR shall constitute a material default under this Contract.

## ARTICLE 49 – WAIVER OF TRIAL BY JURY

IN THE EVENT OF LITIGATION ARISING FROM THIS CONTRACT, TOWN AND CONTRACTOR KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT TO A TRIAL BY JURY. TOWN AND CONTRACTOR HEREBY ACKNOWLEDGE THAT THIS WAIVER PROVISION IS A MATERIAL INDUCEMENT FOR EACH PARTY AGREEING TO ENTER INTO THIS CONTRACT.

## ARTICLE 50 – INSPECTOR GENERAL AND ETHICS

In accordance with Section 12.01 of the Broward County Code of Ordinances, the CONTRACTOR understands that this Contract may be subject to investigation and/or audit by the Broward County Inspector General. The CONTRACTOR understands and agrees to his obligations under this ordinance. The CONTRACTOR further understands and agrees that in addition to all other remedies and consequences provided by law, the failure of the CONTRACTOR or its subcontractors to fully cooperate with the Inspector General, when requested, may be deemed by the TOWN to be a material breach of the Contract justifying its termination.

## ARTICLE 51 – FLORIDA STATUTE § 215.4725

In accordance with Florida Statute § 215.4725: Contractor must certify that the company is not participating in a boycott of Israel. Contractor must also certify that Contractor is not on the Scrutinized Companies that Boycott Israel list, not on the Scrutinized Companies with Activities in Sudan List, and not on the Scrutinized Companies with Activities in the Iran Petroleum Energy Sector List, or been engaged in business operations in Cuba or Syria. Contractor must submit the certification that is attached, as Exhibit "F" to the Town. Submitting a false certification shall be deemed a material breach of contract. The Town shall provide notice, in writing, to the Contractor of the Towns determination concerning the false certification. The Contractor shall have ninety (90) days following receipt of the notice to respond in writing and demonstrate that the determination of false certification was made in error. If the Contractor does not demonstrate that the Towns determination of false certification was made in error then the Town shall have the right to terminate the contract and seek civil remedies pursuant to Florida Statute § 215.4725.

SIGNATURES ON FOLLOWING PAGE

## CONTRACT WITH THE TOWN OF DAVIE UTILITIES DEPARTMENT

**IN WITNESS WHEREOF,** the Parties unto this Contract have set their hands and seals on the day and date first written above.

TOWN OF DAVIE

BY: _____
JUDY PAUL, MAYOR

FERGUSON ENTERPRISES, INC.

BY: _____
PATRICK DAY
BUSINESS DEVELOPMENT MANAGER

ATTEST: (SEAL)

BY: _____
EVELYN ROIG, TOWN CLERK

APPROVED AS TO FORM AND
LEGAL SUFFICIENCY

BY: _____
JOHN RAYSON, TOWN ATTORNEY

APPROVED AS TO TERMS AND
CONDITIONS

BY: _____

26

# Exhibit "E"

RESOLUTION NO. <u>R 2018-329</u>

A RESOLUTION OF THE TOWN OF DAVIE, FLORIDA, CORRECTING A SCRIVENER'S ERRORS IN RESOLUTION NUMBER 2018-205 TO ALLOW FOR THE PURCHASE OF METERS FOR NEW CONSTRUCTION AS STIPULATED IN THE APPROVED CONTRACT FOR THE ADVANCED METERING INFRASTRUCTURE (AMI) SYSTEM WITH FERGUSON ENTERPRISES, INC. PROVIDING FOR SEVERABILITY, PROVIDING FOR CONFLICTS, AND PROVIDING FOR AN EFFECTIVE DATE.

WHEREAS, the Town of Davie solicited bids through RFP No. B-17-149 for the AMI Metering and Infrastructure Project;

WHEREAS, the Town Council of the Town of Davie approved the contract with Ferguson Enterprises, Inc. for the AMI Metering and Infrastructure Project (R2018-205);

WHEREAS, this Resolution corrects a scrivener's error in Resolution Number 2018-205 to allow for the purchase of AMI meters for new construction from this approved contract with Ferguson Enterprises, Inc.; and

WHEREAS, after review, the Town Council hereby authorizes the use of this contract to purchase AMI meters for new construction.

NOW, THEREFORE, BE IT RESOLVED BY THE TOWN COUNCIL OF THE TOWN OF DAVIE, FLORIDA:

<u>SECTION 1.</u> The Town Council of the Town of Davie hereby approves the purchase of AMI meters for new construction as per the pricing approved in the contract with Ferguson Enterprises, Inc. (R2018-205).

<u>SECTION 2.</u> The Town Council of the Town of Davie approves the expenditure of funds from various Utilities Department accounts. Expenditures are to be within the established budget.

<u>SECTION 3.</u> This Resolution shall take effect immediately upon passage and adoption.

PASSED AND ADOPTED THIS <u>5</u>TH DAY OF <u>DECEMBER</u>, 2018.

_____
MAYOR/COUNCILMEMBER

ATTEST:

_____
TOWN CLERK

APPROVED THIS <u>5</u>TH DAY OF <u>DECEMBER</u>, 2018.

# Exhibit "F"

## Summary

CONTRACTOR (Ferguson Enterprises Inc.) is providing the additional coverage as the prime contractor to the TOWN for RFP 17-149. The warranty commitment, per our bid response to RFP 17-149 and subsequent Endpoint Performance Warranty Proposal, is summarized as follows:

A. INFRASTRUCTURE MATERIALS - 100% warranty coverage for years 1 and 2 on defective data collectors and signal repeaters deployed within the approved network design. The annual maintenance agreement on each data collector would begin year 3. Manufacture warranty coverage is outlined in the Mueller Systems End User License Agreement (EULA).

B. INFRASTRUCTURE REPAIR/REPLACEMENT LABOR – 100% warranty coverage for years 1 and 2. This covers the labor, provided by Ferguson or an approved contractor, to repair or replace defective infrastructure materials.

C. ENDPOINT INSTALLATION – 100% warranty coverage for years 1 and 2. This covers the workmanship and adherence to standard operating procedures of our subcontractor, UMS.

D. ENDPOINT MATERIALS – 100% warranty coverage of all meters, registers and/or Mi.Node transmitters as verified and approved through the Mueller Systems RMA process. Specific warranty periods for each component are listed in the Mueller Systems End User License Agreement (EULA).

E. ENDPOINT REPAIR/REPLACEMENT LABOR – 100% warranty coverage for component failures over 2.0% annually for years 1-10 per the Endpoint Performance Warranty Proposal.

## Overview

The Town of Davie has requested additional warranty coverage for the metering endpoints they will deploy under the Mueller Systems Mi.Net® AMI system. For each of the three main components that constitute an AMI metering endpoint: 1) meter body, 2) electronic register and 3) Mi.Node™ transceiver, this proposal provides repair/replacement labor coverage for certain annual failure rates, provided the failures are covered under the Mueller Systems warranty. This additional endpoint performance coverage will become effective after the initial two-year installation warranty expires, as outlined in the RFP requirements. This proposed performance warranty period covers years 3-10.

## Standard Preventive Maintenance

Town staff will be trained on endpoint troubleshooting. As each completed route, with confirmation that all meters are reporting successfully, is turned over to the Town, staff will follow the procedures outlined and specified in the Mi.Node™ Troubleshooting Guide, or Maintenance Standard Operating Procedure provided by Mueller Systems (the "MSOP"). The MSOP should include, at a minimum, the identification of non-responding endpoints and collectors; a procedure to initiate the field service team for field analysis; a timeline for field investigation; field investigation procedures; data collection during the field investigation; communication of results for field investigation; removal/replacement of devices and Return Merchandise Authorization (RMA) procedures.

If an endpoint ceases to report to the network, Town staff shall follow the MSOP to determine if said endpoint has truly failed or simply requires maintenance. The Town shall follow the documented troubleshooting procedures until a meter, register or Mi.Node™ transceiver cannot be restored to normal operating mode. These failed/unresponsive components are candidates for the Mueller Systems RMA process.

PwD

The Town should make every effort to complete the field investigations on a normal weekly/monthly schedule to resolve endpoint failures and ensure the Mi.Net® system is performing at an optimal level. An "Endpoint Failure" refers to an endpoint which has:

(i)     Ceased to communicate with the network,

(ii)    Been evaluated by field staff in accordance with the MSOP,

(iii)   Been returned to Mueller Systems in accordance with the RMA process, and

(iv)    Been confirmed to be a warranted failure under the Mueller Systems quality assurance process.

## Elevated Endpoint Failure

The Town shall perform ongoing normal system maintenance on a monthly or more-frequent basis. Should Endpoint Failures occur in a calendar year, after following the MSOP, at an amount that exceeds 2.0%   per specific component, then Provider shall assume 100% responsibility for labor and materials required to repair or replace the warranted component. This 100% warranty coverage for component failures over 2.0% annually shall be for ten (10) years. Provider will have the option to either provide the labor or reimburse the Town if its own personnel are utilized for the warranty repair or replacement.

After following the MSOP, endpoints that are investigated and identified for return under the RMA process will be returned to Mueller Systems within a reasonable time and quantity.  If the Town performs the labor, RMA returns shall not exceed 35 days from the date of removal from the field. If the endpoint returns exceed such time, all such returns shall be excluded from the failure analysis in the preceding paragraphs.

## Failure Rate Calculation

Endpoint failure percentage will be calculated at the end of each calendar year using the following formula:

$$\frac{\text{Annual sum of confirmed endpoint component Failures}}{\text{commissioned endpoints as defined by Mi.Host software}} \times 100 = \text{component failure percentage}$$

33

Component failure percentage between 0.0% and 2.0% is considered "normal" where the component will be replaced under warranty through the RMA process.

Component failure percentage greater than 2.0% will be considered "elevated" where the component will be replaced under warranty through the RMA process plus a labor fee paid to the Town based on the fee schedule below.

| Warranty Labor Fee Schedule | |
|---|---|
| **Description of Service** | **Fee Paid to Town** |
| Splicing/Nicor® swap of Failed Mi.Node™ transceiver | $8.00 |
| Replacement of failed register | $18.00 |
| Replacement of failed meter body | $28.00 |

### Example:

Assume 9600 total metering endpoints are commissioned and active as monitored by the Mi.Host™ utility interface software. For the calendar year, there are 234 failed Mi.Node™ transceivers returned to Mueller Systems via the RMA process and confirmed by Mueller Systems as a warranted item. The component failure calculation is 234 ÷ 9600 x 100 = 2.44%. The number of failures over 2.0% is 42 (.0044 x 9600 = 42), so Provider will credit the Town of Davie 234 Mi.Node™ transceivers (to be replaced throughout the year upon RMA submittal) plus $336.00 to cover labor for the 42 units in excess of the performance threshold.

PWD

# Exhibit "G"

**MUELLER SYSTEMS**
**MASTER AGREEMENT**

THIS MASTER AGREEMENT (this "**Agreement**") is entered into this _____ day of _____, 2018 between MUELLER SYSTEMS, LLC, a Delaware limited liability corporation having its principal offices at 10210 Statesville Boulevard, Cleveland, North Carolina 27013 (referred to in this Agreement as "**Mueller Systems**" or "**Provider**"), and Town of Davie Utilities Department, whose address is 7351 SW 30 Street, Davie, Florida 33314 (referred to in this Agreement as "**Customer**").  This Agreement governs the sale by Provider and the purchase by Customer for its own use and not for resale of, as applicable, Equipment, Software, Documentation and other items related to advanced metrology infrastructure systems. In consideration of the mutual obligations set forth in this Agreement, Customer and Mueller Systems agree as follows:

1.   **DEFINITIONS**

   a.   "**Content**" means the information developed or legally acquired by Customer which may be used in connection with or accessed by any module of the Software.

   b.   "**Documentation**" means the user guides, reference manuals, and installation materials provided by Provider to Customer related to the Software and Equipment.

   c.   "**Equipment**" means the components, devices, products, equipment and related items provided by Provider identified in Appendix A.

   d.   "**Services**" means activities related to deployment and installation services, repair services, hosting services and technical support/maintenance services as provided by Mueller Systems and as identified in Appendix B.

   e.   "**Software**" means the object code versions of Mueller Systems' software identified in Appendix A, together with all subsequent authorized updates, replacements, modifications or enhancements.

2.   **SOFTWARE**

   a.   Software on Equipment License.  For Equipment purchased by Customer from Mueller Systems, Mueller Systems hereby grants Customer a limited, non-exclusive, non-sublicensable, non-transferable, perpetual, irrevocable license to use and execute the Software embedded in the Equipment for its internal business purposes in connection with such Equipment ("Firmware").

   b.   Online Software Access.  Subject to the terms of this Agreement and the payment of the fees specified in Section 7a herein, Mueller Systems grants to Customer, for its internal business purposes and during the term of this Agreement, a limited, non-exclusive, non-sublicensable, non-transferable right to access and use and make available to Customer's utility users, as applicable, and/or employees the online, hosted Software specified herein.

   c.   Restrictions.  Except as specifically and expressly permitted in writing by Mueller Systems, Customer shall not (i) violate any restriction set forth in this Agreement, (ii) modify, translate, de-compile, reverse compile, disassemble, or create or attempt to create, by reverse engineering or otherwise, the source code from the object code of the Software, (iii) adapt the Software in any way for use to create a derivative work; (iv) include or combine the Software in or with any other software; or (v) use the Software to provide processing services to third parties or on a service bureau basis.  Except as expressly permitted in this Agreement, Customer may not copy the Software other than to make one machine readable copy for disaster recovery or archival purposes. Customer may only make copies of Documentation as reasonably necessary for the use contemplated herein and with proper inclusion of Mueller Systems' copyright notices.

1

    d.  <u>Ownership</u>.  This Agreement does not grant to Customer any ownership interest in the Software or Documentation. Customer has a license to use the Software and Documentation as provided in this Agreement. Customer hereby agrees and acknowledges that Mueller Systems owns all rights, title and interest in the Software and Documentation, and Customer will not contest those rights or engage in any conduct contrary to those rights. Any copy, modification, revision, enhancement, adaptation, translation, or derivative work of or created from the Software and Documentation made by or at the direction of Customer shall be owned solely and exclusively by Mueller Systems, as shall all patent rights, copyrights, trade secret rights, trademark rights and all other proprietary rights, worldwide.

3. **RESERVATION**
Mueller Systems reserves all rights not specifically granted under this Agreement.

4. **EQUIPMENT**
In consideration of the fees set forth in <u>Appendix D</u> of this Agreement, Mueller Systems will provide the Equipment identified in <u>Appendix A</u>.

5. **SERVICES**
In consideration of the fees set forth in <u>Appendix D</u> of this Agreement, Mueller Systems will provide the Services identified in <u>Appendix B</u>.

6. **CONFIDENTIALITY**
The Software, Equipment and Documentation, including any ideas, concepts, know-how and technology contained therein, shall be considered the proprietary and confidential information of Mueller Systems and, as such, shall be subject to the confidentiality provisions of this Agreement. If a separate, written non-disclosure agreement exists between Mueller Systems and Customer, such agreement will control and will apply according to its terms and conditions to all confidential information the parties exchange with each other. If no separate, written non-disclosure agreement exists between Mueller Systems and Customer, the terms listed in <u>Appendix C</u> will apply to the confidential information the parties exchange with each other.

7. **FEES AND PAYMENT**

    a.  <u>Software Fees</u>.  Customer shall pay the Software Fees set forth in <u>Appendix D</u> of this Agreement.

    b.  <u>Equipment Fees</u>.  Customer shall pay the Equipment Fees set forth in <u>Appendix D</u> of this Agreement. Title to the Equipment, except the Software and Documentation that are subject to licenses provided in this Agreement, passes from Mueller Systems to Customer when Mueller Systems ships the Equipment.

    c.  <u>Service Fees</u>.  Customer shall pay the Service Fees set forth in <u>Appendix D</u> of this Agreement. These fees shall be fixed for a two service year periods after successful installation and first use by Customer ("Software Acceptance") which is defined as the availability of the hosted software and at least one MiHub reporting to the software. After the first two years of access and use, the price may be adjusted as mutually agreed upon by both parties. Price adjustment shall be based upon the April twelve (12) month net change to the US Consumer Pricing Index (CPI) in Miami-Fort Lauderdale-West Palm Beach. Price adjustments will take affect at the beginning of the Customer's fiscal year, October 1st.

    d.  <u>Taxes</u>.  All prices and fees are in U.S. dollars unless otherwise specified. All amounts payable under this Agreement are exclusive of all sales, use, value-added, excise, property, withholding, and other taxes and duties. Customer will pay all taxes and duties assessed by any authority in connection with this Agreement and with Customer's performance hereunder. Customer will promptly reimburse Mueller Systems for any and all taxes or duties that Mueller Systems may be required to pay in connection with this Agreement or its performance. This provision does not apply to taxes based on Mueller Systems' income, or any taxes for which Customer is exempt, provided Customer has furnished Mueller Systems with a valid tax exemption certificate.

   e.   <u>Payment</u>. Unless provided otherwise herein, Customer agrees to pay all amounts specified in <u>Appendix D</u> or otherwise due under this Agreement within thirty (30) days after the date of invoice. Past due amounts shall bear interest from the due date until paid at a rate of (i) one and one-half percent (1.5%) per month or (ii) the maximum rate permitted by law, whichever is less. All payments made under this Agreement shall be nonrefundable, except as specifically provided otherwise in this Agreement.

## 8. TERM: TERMINATION

   a.   <u>Term</u>. The Term of this Agreement is two (2) years commencing upon Software Acceptance. This Agreement will automatically renew for subsequent, successive one (1) year periods at the prices specified herein unless either party gives the other party written notice of its intent to not renew at least ninety (90) days prior to the expiration of the then current term.

   b.   <u>Termination for Breach</u>. If either party breaches this Agreement, and such breach is not cured within ten (10) days of the breach, after receiving written notice, the non-breaching party may terminate this Agreement, including all licenses provided herein, effective upon written notice to the other party. The breaching party agrees that if it breaches this Agreement, the non-breaching party will be entitled to injunctive or similar equitable relief and that the breaching party will not argue in any proceeding that its breach will not cause irreparable harm to the non-breaching party or that the non-breaching party can be adequately compensated for any such harm by any remedies other than by injunctive relief.

   c.   <u>Effect of Termination</u>. Termination of this Agreement shall have the effect designated in <u>Appendix B</u>.

   d.   <u>Non-Exclusive Remedy</u>. Termination of this Agreement or any license granted hereunder shall not limit the remedies otherwise available to either party, including injunctive relief.

   e.   <u>Survival</u>. Unless otherwise stated herein, any provision that, by its nature or terms, is intended to survive the expiration or termination of this Agreement, will survive.

## 9. LIMITED WARRANTIES; REMEDIES

   a.   <u>Software</u>. Subject to the exclusions herein, including those in <u>Appendix A</u>, Mueller Systems warrants that commencing from the date of shipment or provision to Customer and continuing for the period set forth in <u>Appendix A</u> (the "**Warranty Period**"), (i) the media on which the Software is furnished will be free of defects in materials and workmanship under normal use; and (ii) the Software will perform substantially in conformance with the applicable Documentation provided to Customer by Mueller Systems. Mueller Systems does not warrant that the Software will operate in combination with other software, except as specified in the Documentation, that the Software will meet the Customer's requirements or that the operation of the Software will be uninterrupted or error-free. Customer assumes responsibility to take adequate precautions against damages which could be caused by defects, interruptions or malfunctions in the Software or the hardware on which it is installed. Mueller Systems' entire obligation and Customer's exclusive remedy with respect to the Software warranties set forth above shall be, at Mueller Systems' option, to either (1) repair or replace any Software containing an error or condition which is reported by Customer in writing to Mueller Systems which causes the Software not to conform with the warranty set forth herein; or (2) refund a pro-rated amount paid by Customer to Mueller Systems and terminate this Agreement and all licenses provided herein.

   b.   <u>Services</u>. Mueller Systems warrants that all services provided by it to Customer under this Agreement shall be performed in a workmanlike manner. Mueller Systems' entire obligation and Customer's exclusive remedy with respect to the Service warranties set forth above shall be the re-performance of the applicable non-conforming Service.

Equipment.  Subject to the exclusions herein, including those in <u>Appendix A</u>, Mueller Systems warrants to Customer that the Equipment will comply with provided specifications for the periods specified in <u>Appendix A</u>. Claims under this Section will be considered if submitted to Mueller Systems within sixty (60) days following the discovery of the noncompliant Equipment covered by this Agreement and provided Mueller Systems or its agents are permitted a commercially reasonable opportunity to examine and analyze the Equipment claimed to be noncompliant.  Mueller Systems' entire obligation and Customer's exclusive remedy with respect to the Equipment warranties set forth herein, at Mueller Systems' option, is repair or replacement of any Equipment found noncompliant, subject to the terms and conditions herein, during the applicable warranty period after such Equipment is properly packaged and returned prepaid to Mueller Systems' designated service center. Return material authorization ("RMA") process turnaround period shall be measured as the time period from receipt of Equipment at Mueller Systems' repair facility to the date that repaired/replaced Equipment leaves Mueller Systems' repair facility bound to Customer.  RMA turnaround period shall be 60 days.

c.   <u>Costs</u>.  Any and all costs associated with uninstalling and shipping noncompliant Equipment and Software and installing replacement Equipment and Software will be the responsibility of the Customer.

d.   <u>Exclusions</u>.  The warranties provided by Mueller Systems shall not apply to Equipment and/or Software which: (i) have been altered, except with the express written consent, permission or instruction of Mueller Systems, (ii) have been used in conjunction with another product resulting in the defect, except for those third party products specifically approved by Mueller Systems, (iii) were other than the most current version of the Software (but only to the extent that any failure of the Software would have been avoided by the use of the most current version), (iv) have been damaged by improper environment, abuse, misuse, accident, negligence, act of God, excessive operating conditions, or unauthorized attachments or modifications, (V) have not been properly installed and operated in accordance with the Documentation, or as otherwise instructed by Mueller Systems, or (vi) any other exclusion set forth in any Appendix hereto.

e.   <u>DISCLAIMERS</u>.  TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE WARRANTIES AND REMEDIES STATED IN THIS DOCUMENT OR ATTACHED TO THIS DOCUMENT ARE EXCLUSIVE AND NO OTHER WARRANTIES OR REMEDIES EXPRESS, IMPLIED OR STATUTORY, APPLY TO THE DOCUMENTATION, THE SOFTWARE, THE EQUIPMENT OR ANY SERVICES TO BE PROVIDED BY MUELLER SYSTEMS UNDER THIS AGREEMENT, INCLUDING BUT NOT LIMITED TO WARRANTIES OR CONDITIONS OF TITLE, NON-INFRINGEMENT, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, QUALITY OR PERFORMANCE, AND ANY IMPLIED WARRANTY ARISING FROM COURSE OF PERFORMANCE, COURSE OF DEALING OR USAGE OF TRADE, ALL OF WHICH MUELLER SYSTEMS EXPRESSLY DISCLAIMS.

10. **INDEMNIFICATION**.  Mueller Systems will indemnify and defend Customer from any third party claim that the Software and Equipment infringe on another person's or company's patent, copyright or other intellectual property right as specified in this Section.  This indemnity does not cover and specifically excludes (a) intellectual property rights recognized in countries and jurisdictions other than the United States, and (b) claims relating to infringement of intellectual property rights by a third party's products and software.  Mueller Systems has no obligation under this Section for any claim to the extent it results from or arises out of Customer's modification of the Equipment or Software or from any combination, operation or use of the Software or Equipment with other third party products or services.  Mueller Systems' duty to indemnify under this Section is contingent upon Mueller Systems receiving prompt notice of a claim and Mueller Systems' right to solely control resolution of a claim.  Customer's sole remedy for an indemnified claim under this Section is as follows:  Mueller Systems will, at its expense and in its discretion either (a) resolve the claim in a way that permits Customer's continued ownership and use of the affected Software and Equipment, (b) provide a comparable non-infringing replacement at no cost to Customer, or (c) accept return of the Software and Equipment, provide a reasonable depreciated refund and terminate this Agreement and all licenses herein.  This Section is the exclusive statement of Mueller Systems' liability and responsibility for indemnifying Customer for infringement of intellectual property rights.

11. **LIMITATION OF LIABILITY.**

    a. MUELLER SYSTEMS' MAXIMUM LIABILITY HEREUNDER IS EXPRESSLY LIMITED TO THE TOTAL AMOUNT PAID FOR THE SOFTWARE, SERVICES, AND EQUIPMENT IN THE IMMEDIATELY PRECEDING TWELVE (12) MONTHS AND WILL UNDER NO CIRCUMSTANCE EXCEED THE AMOUNT PAID BY CUSTOMER IN THE IMMEDIATELY PRECEDING TWELVE (12) MONTHS FOR THE SOFTWARE, SERVICES AND EQUIPMENT PROVIDED BY MUELLER SYSTEMS UNDER THIS AGREEMENT.  Some states do not allow the limitation and/or exclusion of liability for incidental or consequential damages, so the above limitation may not apply.

    b. The provision of this Agreement allocates the risks between Customer and Mueller Systems.  Mueller Systems' pricing reflects this allocation of risk and the limitations of liability specified herein.

12. **NOTICE.**  All notices required to be given hereunder shall be in writing.  Notice shall be considered delivered and effective upon receipt when sent by registered or certified mail, return receipt requested, addressed to the parties as set forth above.  Either party, upon written notice, may change any name or address to which future notice shall be sent.

13. **GENERAL.**  The Software will not be exported or re-exported in violation of any applicable jurisdiction.  The rights and obligations of this Agreement are personal rights granted to the Customer only.  The Customer may not transfer or assign any of the rights or obligations granted under this Agreement to any other person or legal entity.  Any such purported transfer or assignment shall be null and void.  Mueller Systems will be free of liability to the Customer where Mueller Systems is prevented from executing its obligations under this Agreement in whole or in part due to force majeure, such as earthquake, typhoon, flood, fire, and war or any other unforeseen and uncontrollable event.  Any modification or amendment any of the provisions of this Agreement will be in writing and signed by an authorized officer of each party.  This Agreement does not create or imply any relationship in agency or partnership between the parties.  Headings are inserted for the convenience of the parties only and are not to be considered when interpreting this Agreement.

The validity of this Agreement and the rights, obligations, and relationship of the parties resulting from same will be interpreted and determined in accordance with the law of the State of Delaware, and applicable federal law, without regard to its choice of law provisions.  The parties specifically exclude from application to the Agreement the United Nations Convention on Contracts for the International Sale of Goods and the Uniform Computer Information Transactions Act.  If any provision of this Agreement is contrary to and in violation of any applicable law, such provision will be considered null and void to the extent that it is contrary to such law, but all other provisions will remain in effect.  The waiver or failure of either party to exercise any right herein shall not be deemed a waiver of any further right hereunder.  This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes all other prior contemporary agreements, understandings, and commitments between the parties regarding the subject matter of this Agreement.

14. **FLORIDA PUBLIC RECORDS ACT, CHAPTER 119 FLORIDA STATUTES.**

The Provider shall comply with the Florida Public Records Act, Chapter 119, Florida Statutes, and, if determined to be acting on behalf of the Customer as provided in Section 119.011(2), Florida Statutes, specifically agrees to:

    a. Keep and maintain public records required by the Customer to perform the service.

    b. Upon request from the Customer's custodian of public records or designee, provide the Customer with a copy of the requested records or allow the records to be inspected or copied within a reasonable time at a cost that does not exceed the cost provided in Chapter 119, Florida Statutes, or as otherwise provided by law.

c.   Ensure that public records that are exempt or confidential and exempt from public records disclosure requirements are not disclosed except as authorized by law for the duration of this Agreement and following completion of this Agreement if the Provider does not transfer the records to the Customer.

d.   Upon completion of this Agreement, transfer, at no cost to the Customer, all public records in possession of the Provider or keep and maintain public records required by the Customer to perform the service.  If the Provider transfers all public records to the Customer upon completion of the Agreement, the Provider shall destroy any duplicate public records that are exempt or confidential and exempt from public records disclosure requirements.  If the Provider keeps and maintains public records upon completion of the Agreement, the Provider shall meet all applicable requirements for retaining public records.  All records stored electronically must be provided to the Customer, upon request from the Customer's custodian of public records or designee, in a format that is compatible with the information technology systems of the Customer.

> **IF THE PROVIDER HAS QUESTIONS REGARDING THE APPLICATION OF CHAPTER 119, FLORIDA STATUTES, TO THE PROVIDER'S DUTY TO PROVIDE PUBLIC RECORDS RELATING TO THIS AGREEMENT, CONTACT THE CUSTODIAN OF PUBLIC RECORDS OR DESIGNEE, EVELYN ROIG, TOWN CLERK, PHONE:  954-797-1011, EMAIL:  EVELYN_ROIG@DAVIE-FL.GOV, ADDRESS OF THE TOWN CLERK:  6591 ORANGE DRIVE, DAVIE, FLORIDA 33314.**

## 15.  WAIVER OF TRIAL BY JURY AND VENUE.

In the event of litigation arising from this Agreement, Customer and Provider knowingly, voluntarily and intentionally waive any right to a trial by jury.  Customer and Provider hereby acknowledge that this waiver provision is a material inducement for each party agreeing to enter into this Agreement.  Customer and Provider agree that any litigation arising out of this Agreement shall have the exclusive venue of Broward County, Florida.

## 16.  FLORIDA STATUE § 215.4725

In accordance with Florida Statute § 215.4725:  Provider must certify that the company is not participating in a boycott of Israel.  Provider must also certify that Provider is not on the Scrutinized Companies that Boycott Israel list, not on the Scrutinized Companies with Activities in Sudan List, and not on the Scrutinized Companies with Activities in the Iran Petroleum Energy Sector List, or been engaged in business operations in Cuba or Syria.  Provider must submit the certification that is attached, as Appendix E to the Customer.  Submitting a false certification shall be deemed a material breach of contract.  The Customer shall provide notice, in writing, to the Provider of the Customers determination concerning the false certification.  The Provider shall have ninety (90) days following receipt of the notice to respond in writing and demonstrate that the determination of false certification was made in error.  If the Provider does not demonstrate that the Customer's determination of false certification was made in error, then the Customer shall have the right to terminate the Agreement and seek civil remedies pursuant to Florida Statue § 215.4725.

*[Signatures Appear on the Following Page]*

**EACH PARTY ACKNOWLEDGES THAT IT HAS READ THIS AGREEMENT, UNDERSTANDS IT, AND AGREES TO BE BOUND BY ITS TERMS AND CONDITIONS.**

<u>Mueller Systems, LLC</u>

By: _____

<u>John DeYarman</u>
Name (Print or Type)


<u>Vice President and General Manager – Metrology</u>
Title

<u>Town of Davie</u>

By: _____

_____<u>Judy Paul</u>_____
Name (Print or Type)


_____<u>Mayor</u>_____
Title

# Appendix A

### Software / Equipment Warranty

### LIMITED WARRANTY FOR MUELLER SYSTEMS PRODUCTS

## Product Warranty

Subject to the limitations and conditions set forth herein, Mueller Systems warrants that commencing from the date of shipment to the Customer and continuing for the period set forth in Attachment A (referred to as the "Warranty Period"); (a) the Hardware will be free from defects in materials and workmanship under normal use, installation and service conditions; (b) the media on which the Software is furnished will be free of defects in materials and workmanship under normal use; and (c) the Software substantially conforms to the applicable published Mueller Systems functional specifications for the Software. Except as provided for herein, Mueller Systems will, at its option, either repair or replace the Product if it malfunctions or becomes inoperable due to a defect in workmanship or materials during the Warranty Period. If in its sole discretion Mueller Systems determines that it is unable to repair or replace the Product, it will refund to Customer a pro-rated amount paid for the defective Product. Products that are repaired or replaced under this Warranty will be warranted for the remainder of the original Warranty Period or 30 days, whichever is longer.

## Exclusions

If, in Mueller Systems' sole judgment, a Product has been subject to misuse, neglect or accident or has been damaged through abuse, alternation, improper installation or application, failure to follow Mueller Systems' operation or maintenance instructions or negligence in transportation, handling, or storage, or repaired by anyone other than Mueller Systems or its authorized personnel, this Warranty will not be applicable. For Software, this Warranty will not apply if there has been a change to the Software's operating environment not made or authorized by Mueller Systems; Customer fails to install any correction or enhancement provided by Mueller Systems; or a virus is introduced through no fault of Mueller Systems. This Warranty will also not cover damage due to acts of God, power failures, lightening, fire, fold, severe weather, hailstorms, insect and pest infestation, and other events reasonable beyond Mueller Systems' control.

## Product Returns

Claims under this Warranty will be considered if submitted to Mueller Systems within 60 days following the discovery of any defect covered by this Warranty and provided Mueller Systems or its agents are permitted a commercially reasonable opportunity to examine and analyze the material or workmanship claimed to be defective. If Mueller Systems elects to repair the Product, Customer will send it, properly packaged with postage paid by Provider, to a repair facility designated by Mueller Systems. Provider will pay the cost of returning defective Products to the place of repair designated by Mueller Systems and Mueller Systems will pay the cost of delivering repaired or replacement Products to Customer. The RMA process shall take no longer than five weeks.

## Limits of Warranty and Liability

Damage to persons or property or other loss or injury resulting from defects in the Products or from improper installation or use shall not be the responsibility of Mueller Systems. Mueller Systems will not under any circumstance be liable for any indirect, special, incidental or consequential damages of any nature, whether based on contract, tort or other legal theory including but not limited to, business interruption costs, loss of profit or revenue, loss of data, loss of use of services, cost of capital, cost of substitute services or facilities, downtime costs or damages and expenses arising out of third-party claims, even if Mueller Systems has been advised of the possibility of such damages. In all cases, Mueller Systems' total liability will be limited to the total payments made by Customer to Mueller Systems for the Products and services provided.

## Disclaimer of Warranty

EXCEPT AS EXPRESSLY SET FORTH IN THIS WARRANTY, MUELLER SYSTEMS DISCLAIMS ALL OTHER EXPRESS OR IMPLIED WARRANTIES, CONDITIONS, OR REPRESENTATIONS, INCLUDING BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, WARRANTIES AGAINST TITLE AND AGAINST INFRINGEMENT AND WARRANTIES ARISING FROM A COURSE OF DEALING, USAGE OR TRADE PRACTICE. TO THE EXTENT ANY IMPLIED WARRANTY CANNOT BE EXCLUDED, SUCH WARRANTY IS LIMITED IN

**1. AMR / AMI Products[1]:**

**Software** – Mi.Host, Mi.Data, MCM (Meter Control Management), MCM Mobile, EZReader and other software products are covered by a one (1) year warranty from the date of shipment or provision to Customer.

**Hardware** – Mi.Node electric (Smart Meter), Mi.Hub Data Collector, Street Machine RF Receiver, PitStop handheld receivers, TRuRead™ remotes, laptops PC's, Server Hardware and all other peripheral electronic products are covered by a one (1) year warranty from the date of shipment to Customer.

**Radio Modules** – Mi.Node™ water modules and Hot Rod™ modules are covered by a ten (10) year warranty from the date of shipment to Customer. Additionally, Mi.Node water modules and Hot Rod™ modules are covered by a prorated warranty for years eleven (11) through fifteen (15) at a fifty-percent (50%) discount, years sixteen (16) through twenty (20) at a twenty-five-percent (25%) discount. Mi.Hydrant and Repeater Transceivers are covered by a ten (10) year warranty from the date of shipment to Customer. 420RDM (Remote Disconnect Valve) meters are covered by a five (5) year warranty from the date of shipment to Customer. All prorated warranty credits listed will apply to list pricing in effect at the time of the return.

**Encoder Register Products** – Hersey Translator™ Encoder registers, Hersey SSR Solid State Register, ME-8 Encoder registers, Wall Pads and Pit Pads are covered by a ten (10) year warranty from the date of shipment to Customer. Additionally, the complete unit is covered by a prorated warranty for years eleven (11) through fifteen (15) at a fifty-percent (50%) discount, years sixteen (16) through twenty (20) at a twenty-five-percent (25%) discount from the date of shipment to Customer. All prorated warranty credits listed will apply to list pricing in effect at the time of the return.

**2. Water Metering Products:**

**Models 400, 500, MVR, RFM, FM3, HM,** and **HbMag** cold-water meters and detector check models, **EDCIV** are covered for a period of one (1) year from the date of shipment to Customer.

**Maincases** for the above listed meters are covered for a period of twenty-five (25) years from the date of shipment to Customer.

**Standard Registers** for the above listed meters are covered for a period of fifteen (15) years from the date of shipment to Customer.

**Models 400 and 500** meters perform to AWWA new meter accuracy standards as defined in the most current revision for a period of five (5) years from the date of shipment to Customer.

**Models MVR, RFM, FM3, HM and HbMag** meters perform to AWWA new meter accuracy standard as defined in the most current revision for a period of one (1) year from the date of shipment to Customer.

**Models 400 and 500** meters perform to AWWA repaired meter accuracy standards for the following time periods:

5/8"– Fifteen (15) years from the date of shipment to Customer or the registration of 1,750,000 U.S. gallons, whichever comes first;

3/4"– Fifteen (15) years from the date of shipment to Customer or the registration of 2,000,000 U.S. gallons, whichever comes first;

1"– Fifteen (15) years from the date of shipment to Customer or the registration of 3,000,000 U.S. gallons, whichever comes first;

1-1/2"– Fifteen (15) years from the date of shipment to Customer or the registration of 5,500,000 U.S. gallons, whichever comes first;

2"– Fifteen (15) years from the date of shipment to Customer or the registration of 8,500,000 U.S. gallons, whichever comes first.

**Solid State Meters (SSM)** Mueller Systems SSM will meet or exceed accuracy of +/-1.5% between the specified minimum flow rate to the specified maximum flow rate for ten (10) years from date of shipment according to the following sizes:

5/8" Meter -0.1 gpm to 20 gpm 5/8" x ¾", ¾" Short, and ¾" Long Meter – 0.1 to 30 gpm 1" Meter – 0.4 to 55 gpm 1 ½" Meter – 0.8 to 100 gpm 2" Meter – 0.8 to 160 gpm

The SSM is covered by a prorated warranty for years eleven (11) through fifteen (15) at a fifty-percent (50%) discount, years sixteen (16) through twenty (20) at a twenty-five-percent (25%) discount. The prorated warranty credit listed will apply to list pricing in effect at the time of the return.

If the above listed meters do not perform as specified, Provider will repair or replace them, at Provider's option, subject to the following:

[1] Unless otherwise expressly stated herein, all warranty terms are provided from the date of shipment to Customer.

An applicable meter shall be noncompliant if it fails to pass an accuracy test, conducted by the customer according to AWWA standards. If the meter is inoperative because of foreign material, all such material must be removed prior to testing. A copy of the customer's test results must accompany the meter being returned. If the customer chooses not to test a meter before returning it, Provider will repair or replace the meter at Provider's option after the meter has been tested by Provider. When test is conducted by Provider, the customer will be charged a reasonable testing fee.

# **Appendix B**

## Services

### 1. Software Services and Support Obligations

a. "Update" to the Software means a subsequent release of the Software that Provider makes generally available to its current customers for the Software. Updates include changes and corrections to the Software as are required to keep the Software in substantial conformance with the applicable Documentation and that are created by Provider as corrections for defects in the Software. Updates shall not include any release, option or future product that Provider licenses separately. Provider shall in its sole discretion determine the nature, content, timing and release of any Updates.

b. Web-based support, consisting of information on the most current release of the Software through Provider's web site.

c. Phone support in the form of advice and counsel via telephone regarding Customer's use of the most current release of the Software, as well as Customer's connectivity and ability to access Content. Phone Support is provided from 8:00 AM to 7:00 PM Eastern Time, Monday through Thursday and 8:00 AM to 5:00 PM Eastern Time on Fridays. All hours and days exclude recognized U.S. holidays observed by Mueller Systems.

### 2. Software Hosting Services

a. Except as specifically permitted in this Agreement, Customer shall have web-based access the Software hosted by Provider pursuant to this Agreement.

b. Provider shall provide Customer with access and related hosting services to the Software installed on Provider's servers. Provider will also install the Content provided by Customer. Provider will define the appropriate performance specifications and will host the server at a Provider's location. Provider will monitor and perform routine maintenance on the server, and if the server is not operating properly, will make a good faith effort to operate Customer's system on a backup server, if available. Access to Customer's server is restricted to authorized Provider information technology and support personnel only. Differential and full server backups are performed when reasonably practicable.

c. Customer shall be responsible for installing, operating and maintaining the equipment, software, and/or facilities at Customer location recommended by Provider for effective access to and use of the Software installed on Mueller Systems server. Customer shall be responsible for providing and maintaining its own Internet access and all necessary telecommunications equipment at Customer's location necessary for accessing the Software.

d. Upon termination, for any reason, of the Agreement or any license(s) granted herein, Provider shall immediately cease providing access to the Software and Hosting Services. Customer shall (i) immediately stop access and use of all such Provider confidential information (including Software); (ii) shall return all copies of the Software, Documentation, and any Provider confidential information to Provider; and (iii) delete all Software, Documentation, and other confidential information off of any and all storage media possessed or controlled by Customer. Customer shall provide Provider with written certification signed by an officer of Customer that Customer has complied with the provisions of this Section. Customer shall immediately pay all amounts due to Provider.

# **Appendix C**

## **Confidential Information**

For purposes of this Attachment, "party" or "parties" shall mean Provider and Customer, including their respective subsidiaries and affiliates who are providing information under this Agreement. The parties agree to maintain confidential information as follows:

1.   Definition of Confidential Information. The parties understand and agree that confidential information is any and all current and future Equipment, Documentation and/or Software information, roadmap, technical or financial information, customer names, addresses and related data, contracts, practices, procedures and other business information, including software reports, strategies, plans, documents, drawings, machines, tools, models, patent disclosures, samples, materials and requests for proposals that may be disclosed between the parties, whether written, oral, electronic or otherwise, however and wherever acquired ("Confidential Information"). Confidential Information excludes any information which would otherwise fall in the definitions above, but which was (a) known to the recipient of the information ("Recipient") before receipt from the disclosing party; (b) publicly available through no fault of Recipient; (c) rightly received by Recipient from a third party without a duty of confidentiality; (d) disclosed by disclosing party to a third party without a duty of confidentiality on the third party; (e) independently developed by Recipient without breach of this or any other confidentiality agreement; or (f) disclosed by Recipient after prior written approval from the disclosing party.

2.   Obligations of Confidentiality and Remedies. Recipient agrees to protect the disclosing party's Confidential Information with the same degree of care, but no less than a reasonable degree of care, as Recipient uses with respect to its own Confidential Information. Neither party has any obligation to exchange Confidential Information. Both parties acknowledge and agree that the disclosure of the other party's Confidential Information could cause irreparable harm. Therefore, an injured party is entitled to applicable equitable relief, including injunctions, in addition to other remedies, for such wrongful disclosure of Confidential Information. In addition, disclosure of Confidential Information required by a government body or court of law is not a violation of this Section if the Recipient gives prompt notice of the required disclosure to the disclosing party.

3.   Term of Confidentiality Obligations. Recipient's duty to protect Confidential Information expires three (3) years from the date of disclosure of the particular Confidential Information.

4.   No warranties on Confidential Information.  Neither party warrants or guarantees the accuracy of any Confidential Information transferred between the parties.

# Appendix D

## Annual Fees

| Item Description | Quantity | Service Pricing | | |
|---|---|---|---|---|
| | | **Unit Service Price** | **Extended Service Price** | **Total Price** |
| **HOSTING: Mi.Host MDM Software Annual Fee (up to 15K)** *\* Pricing will be held for 2 years* | 9601 | $ 2.15 | $ 20,642.15 | $ 20,642.15 |
| **HOSTING: Mi.Data Consumer Portal Annual Fee (up to 15K)** *\*\* Pricing will be held for 5 years* | 9601 | $ 2.02 | $ 19,394.02 | $ 19,394.02 |
| **Mi.Data™ Consumer Portal Setup & Customization** *\*\* One-time fee / Pricing will be held for 5 years* | 1 | $ 25,000.00 | $ 25,000.00 | $ 25,000.00 |
| **Annual cost for hardware maintenance - Per Mi.Hub Collector (Optional Part # MS-G-M-YR)** *\* Pricing will be held for 2 years* | 3 | $ 1,050.00 | $ 3,150.00 | $ 3,150.00 |
| **Annual cost for hardware maintenance -Per Mi.Tech Handheld and RF maintenance radio (Optional part # MS-H-M-YR)** *\* Pricing will be held for 2 years* | 2 | $ 900.00 | $ 1,800.00 | $ 1,800.00 |
| **Annual 3G Cellular Backhaul Data Plan (per collector (part # MS CELLULAR)** *\* Pricing will be held for 2 years* | 3 | $ 360.00 | $ 1,080.00 | $ 1,080.00 |
| | | | $ 71,066.17 | $ 71,066.17 |

\*After the two (2) year period, the service fees (hosting and maintenance) may be adjusted based on mutually agreeable terms and conditions by the Customer and Provider, but not greater than the relevant 12 month net change to the U.S. Consumer Price Index (CPI).\*\*Consumer Portal Setup & Customization and Annual Fee will be held for five (5) years. After five (5) year period annual fees may be adjusted based on mutually agreeable terms and conditions by the Town and Provider, but not greater than the April twelve (12) month net change to the U.S. Consumer Price Index (CPI) in Miami-Fort Lauderdale-West Palm Beach. Price adjustments will take affect at the beginning of the Customer's fiscal year, October 1st.

**Appendix E**

# CERTIFICATION PURSUANT TO FLORIDA STATUTE § 215.4725

I, __John DeYarman_____, on behalf of _Mueller Systems, LLC_____,
    <span style="font-size:small">Print Name</span>               <span style="font-size:small">Company Name</span>

certifies that _Mueller Systems, LLC_____ does not:
            <span style="font-size:small">Company Name</span>

1. Participate in a boycott of Israel; and

2. Is not on the Scrutinized Companies that Boycott Israel list; and

3. Is not on the Scrutinized Companies with Activities in Sudan List; and

4. Is not on the Scrutinized Companies with Activities in the Iran Petroleum Energy Sector List; and

5. Has not engaged in business operations in Cuba or Syria.

_____
Signature

_Vice President and General Manager - Metrology_
Title

_7-9-2018_____
Date